UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

IN RE STUCCO LITIGATION

THIS DOCUMENT RELATES TO:
ALL CASES

Civil No. 5-96-CV-287-BR(2)

**FIRST AMENDED AND
CONSOLIDATED CLASS ACTION
COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF**

<u>JURY TRIAL DEMANDED</u>

Individual and Representative Plaintiffs (hereafter "Plaintiffs"), on behalf of themselves and all others similarly situated, and upon information and belief, complain as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is a class action against Defendants on behalf of all persons and entities who are owners of a home or other residential structure in the United States in which Defendants' synthetic stucco Exterior Insulation and Finish Systems (hereafter "EIFS" or "systems") have been installed.

2.      For over 10 years, Defendants have knowingly manufactured, distributed, furnished and falsely advertised defectively designed EIFS to builders and property owners throughout the United States. As detailed below, Defendants failed to adequately design EIFS before distributing it to the general public, and failed to remove EIFS from the market or take other remedial action while knowing of and after learning of the defective nature of EIFS. EIFS is uniformly defective as designed and manufactured in the United States because, *inter alia*, when it is exposed to moisture under normal weather conditions, the moisture intrudes and becomes trapped between the EIFS and the structure and interior finishes of the walls. Unable to "escape," the trapped moisture causes wood to rot and decay, and steel to corrode; and promotes mold growth in and insect infestation of wood, drywall, masonry and insulation. If unchecked, these problems ultimately result in significant

structural damage to the house. In sum, notwithstanding Defendants' representations otherwise, EIFS, as designed and furnished by the Defendants, is defective as a barrier system, because it allows damaging moisture intrusion behind the exterior cladding of a home.

3. The EIFS owned by Plaintiffs and the Plaintiff Class members have either manifested the defects or will manifest same prior to the expiration of any applicable warranties given by Defendants.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $50,000 as to each Plaintiff and every member of the proposed Plaintiff Class, and because there is complete diversity of citizenship between the individual and representative Plaintiffs and the Defendants. This Court has pendent jurisdiction over the state common law and statutory claims for relief under 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). Plaintiffs and many Plaintiff Class members purchased EIFS in this District. In addition, a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

### Plaintiffs

6. Plaintiffs Thomas E. Todd and wife, Virginia J. Todd, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Shield Industries, Inc. and United States Gypsum.

7. Plaintiffs William L. Schaal and wife, Kay S. Schaal, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by STO Corporation.

2

8.      Plaintiffs William R. Lamoureux and wife, Betty Lamoureux, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Parex, Inc.

9.      Plaintiffs Richard C. Campbell and wife, Karen Campbell, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Dryvit Systems, Inc.

10.     Plaintiffs Raymond Laning and wife, Leslie Laning, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by STO Corporation.

11.     Plaintiffs Jack Entwistle and wife, Mary J. Entwistle, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Dryvit Systems, Inc.

12.     Plaintiffs Dr. Salvador B. Lukban and wife, Leni Lukban, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Thomas Waterproof Coatings Co.

13.     Plaintiffs William C. Stanback and wife, Nancy B. Stanback, residents of North Carolina, own a house in Salisbury, Rowan County, North Carolina, which contains EIFS manufactured, distributed, marketed and furnished by Thomas Waterproof Coatings Co.

14.     Plaintiffs Michael D. Coleman and wife, Karen D. Coleman, residents of Wilmington, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Continental Stucco Products and/or European Stucco.

3

15.     Plaintiffs H. Mitchell Baker, III and wife, Patricia S. Baker, residents of Wrightsville Beach, New Hanover County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by STO Corporation.

16.     Plaintiffs Don Edmondson, and wife, Mary Edmondson, residents of Cary, Wake County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Dryvit Systems, Inc.

17.     Plaintiffs Charles Nicholson, and wife, Ann Nicholson, residents of Raleigh, Wake County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by STO Corporation.

18.     Plaintiffs Dayton Kirk, and wife, Pamela O. Kirk, residents of Raleigh, Wake County, North Carolina, own a house which contains EIFS manufactured, distributed, marketed and furnished by Finestone Corporation and/or Anthony Industries, Inc.

19.     Plaintiff Anthony DiLeo, resident of Wilmington, New Hanover County, North Carolina, owns a house which contains EIFS manufactured, distributed, marketed and furnished by Senergy, Inc.

20.     Plaintiffs William R. Burton and Leora M. Burton, residents of Wilmington, New Hanover County, North Carolina, own a home which contains EIFS manufactured, distributed, marketed and furnished by Continental Stucco Products.

**Defendants**

21.     Defendant Dryvit Systems, Inc., ("Dryvit") is a Rhode Island corporation headquartered in West Warwick, Rhode Island.  Dryvit is a wholly-owned subsidiary of RPM, Inc., an Ohio corporation headquartered in Medina, Ohio.  Since a time commencing no later than 1970,

4

Dryvit manufactured, distributed, furnished and sold EIFS throughout the United States. Dryvit is a Defendant in all of the counts of this Complaint.

22.    Defendant STO Corporation ("STO") is a New York corporation headquartered in Atlanta, Georgia. During the applicable time period, STO manufactured, distributed, furnished and sold EIFS throughout the United States. STO is a Defendant in all of the counts of this Complaint.

23.    Defendant Shield Industries, Inc. ("Shield Industries") is a Georgia corporation headquartered in Dallas, Georgia. During the applicable time period, Shield Industries manufactured, distributed, furnished and sold EIFS throughout the United States. Shield Industries is a Defendant in all of the counts of this Complaint.

24.    Defendant Parex, Inc. ("Parex") is a Georgia corporation headquartered in Redian, Georgia. During the applicable time period, Parex manufactured, distributed, furnished and sold EIFS throughout the United States. Parex is a Defendant in all of the counts of this Complaint.

25.    Defendant Thomas Waterproof Coatings Co. ("Thomas") is a Georgia corporation headquartered in Atlanta, GA. During the applicable time period, Thomas manufactured, distributed, furnished and sold EIFS throughout the United States, including EIFS bearing the name "Damtite". Thomas is a Defendant in all of the counts of this Complaint.

26.    Defendant Continental Stucco Products ("Continental") is a Georgia corporation headquartered in Atlanta, GA. During the applicable time period, Continental manufactured, distributed, furnished and sold EIFS throughout the United States, including EIFS bearing the name "Ameri-cote." Continental is a Defendant in all of the counts of this Complaint.

27.    Defendant Corev America, Inc. ("Corev") is a Texas corporation headquartered in Houston, Texas. During the applicable time period, Corev manufactured, distributed, furnished and sold EIFS throughout the United States. Corev is a Defendant in Counts I-III of this Complaint.

5

28. Defendant Finestone Corporation ("Finestone") is a Delaware corporation headquartered in Adrian, Michigan. During the applicable time period, Finestone manufactured, distributed, furnished and sold EIFS throughout the United States. Finestone is a Defendant in all of the counts of this Complaint.

29. Defendant Anthony Industries, Inc. ("Anthony") is a Delaware corporation headquartered in Los Angeles, California. Anthony owns the Finestone product line, including its EIFS products, as well as Finestone itself. During the applicable time period, through the Finestone product line, Anthony manufactured, distributed, furnished and sold EIFS throughout the United States. Anthony is a Defendant in all the counts of this Complaint.

30. Defendant Omega Products Corporation ("Omega") is a California corporation headquartered in Santa Ana, California. During the applicable time period, Omega manufactured, distributed, furnished and sold EIFS throughout the United States. Omega is a Defendant in Counts I-III of this Complaint.

31. Defendant Senergy, Inc. ("Senergy") is a Rhode Island corporation headquartered in Cranston, Rhode Island. During the applicable time period, Senergy manufactured, distributed, furnished and sold EIFS throughout the United States. Senergy is a Defendant in all Counts of this Complaint.

32. Defendant Thoro System Products, Inc. ("Thoro") is a Delaware corporation headquartered in Miami, Florida. During the applicable time period, Thoro manufactured, distributed, furnished and sold EIFS throughout the United States. Thoro is a Defendant in Counts I-III of this Complaint.

33. Defendant Pleko Products, Inc. ("Pleko") is a Washington corporation headquartered in Tacoma, Washington. During the applicable time period, Pleko manufactured, distributed,

6

furnished and sold EIFS throughout the United States. Pleko is a defendant in Counts I-III of this Complaint.

34.    Defendant United States Gypsum Company ("U.S. Gypsum") is a Delaware corporation headquartered in Chicago, Illinois. During the applicable time period, U.S. Gypsum manufactured, distributed, furnished and sold EIFS throughout the United States. U. S. Gypsum is a Defendant in all Counts of this Complaint.

35.    Defendant European Stucco ("European Stucco") is a Georgia corporation headquartered in Atlanta, Georgia. During the applicable time period, European Stucco manufactured, distributed, furnished and sold EIFS throughout the United States. European Stucco is a Defendant in all Counts of this Complaint.

36.    Defendant EIFS Industry Manufacturers' Association ("EIMA") is an industry trade association headquartered in Clearwater, Florida. During the applicable time period, EIMA was a trade association for EIFS manufacturers, including Defendants Dryvit, STO, Parex, Corev, Finestone, Omega, Senergy, Thoro, Pleko, and U.S. Gypsum. On behalf of its members, EIMA disseminated statements, literature, and other information regarding EIFS throughout the United States. EIMA is defendant in Counts I-III of this Complaint.

## FACTUAL ALLEGATIONS
### The Defective EIFS

37.    EIFS is a type of synthetic stucco exterior wall cladding consisting of insulation and finishes. EIFS is represented by the Defendants to function as a building "skin", supposedly protecting the building structure from moisture. EIFS has been promoted by the Defendants as a "less expensive" alternative to other "conventional" building materials, and was introduced into the United States from Europe in 1969. Although originally used in non-residential buildings, EIFS has,

7

over the last ten years, been heavily promoted by the Defendants for residential use. The Defendants named in this Complaint are leading manufacturers, distributors, promoters and furnishers of EIFS in the United States.

38.    In national and regional consumer, professional and trade publications, Defendants represented that EIFS is moisture resistant, cost effective and virtually maintenance-free. Among other representations, the Defendants have represented that EIFS is "ideally" suited for new houses.

39.    Defendants and others, including Defendants' trade organization, EIMA, made these and other such uniform misrepresentations to the home construction industry. Defendants made such misrepresentations with the expectation, desire, and result that Plaintiffs and Plaintiff Class Members would rely, directly and/or indirectly, upon these representations. These representations resulted in increased sales of Defendants' EIFS.

40.    The Defendants' representations and warranties were false when made.

41.    Unknown to the public, EIFS is defectively designed and manufactured. Among other defects, EIFS fails to withstand normal weather conditions and allows for the intrusion of moisture into the structural foundation of the home. When a home or other structure is exposed to moisture under normal weather conditions, water is trapped between the system's synthetic stucco facade and the interior finishes of the walls of the structure. This moisture is trapped in the structure causing wood to rot and decay and steel to corrode. Furthermore, because the system has no building paper or drainage mechanism, the moisture intrusion causes substantial structural damage to the home. The moisture promotes mold growth and insect infestation of wood, masonry and insulation, which ultimately causes substantial damage to the home.

42.    Notwithstanding the Defendants' representations otherwise, as designed, EIFS allows for moisture intrusion into the structure and foundation of the home. EIFS fails to perform as

8

represented and expressly or impliedly warranted and does not perform in accordance with the reasonable expectations of Plaintiffs and members of the Plaintiffs class.

43.     Defendants advertised, sold, distributed and furnished EIFS to Plaintiffs and Plaintiff Class members which Defendants knew, or should reasonably have known, was defectively designed and would ultimately result in water intrusion and damage to Plaintiffs' and Class members' homes. Defendants knowingly manufactured, distributed, furnished, warranted and marketed a defective product, and failed to adequately design, formulate and manufacture EIFS before marketing and furnishing it as supposedly suitable product for the exterior insulation and finish of homes and other residential structures.

44.     Notwithstanding the fact that they have long known the systems' inherent defects, Defendants have failed to remove their defective EIFS from the market or to take other adequate remedial action to this date.

45.     Among other defects, the Defendants knew or should have known, that:

   a.     only a slight deviation from the recommended base coat thickness would lead to substantial EIFS deterioration, and resultant structural damage to the home;

   b.     use of gypsum, OSB and/or plywood sheathing results in increased moisture penetration and the failure of EIFS, with resultant structural damage to the home;

   c.     failure to "double seal" sealant joints results in EIFS failure and structural damage to the home;

   d.     use of EIFS with a "vapor barrier" results in the collection of condensed vapor, causing deterioration to the home;

   e.     EIFS requires heavy maintenance and extensive inspection to insure that water is not trapped inside the walls of a home;

9

f.   the use of EIFS with wood or other less stable substrate than masonry or concrete substantially increases the risk of deterioration due to moisture penetration;

g.   customary workmanship, as well as degradation of materials by weathering, result in water leakage and damage to the home;

h.   the absence of a cavity wall and/or a drainage plane substantially increases the likelihood that water will be trapped in the inside structure of the home;

i.   the design of EIFS improperly places reliance on a sealant system which cannot prevent water intrusion;

j.   essentially any water penetration results in rapid deterioration of the EIFS itself;

k.   use of a barrier wall constructed EIFS -- which relies solely on surface seals to prevent water intrusion-- does not provide an adequate level of waterproofing reliability; and

l.   because EIFS lacks any waterproof backup, rain and moisture penetration is likely to occur.

## The Defendants Knew of Should Have Known of the Defect

46.   Defendants knew, based on the information available to them, including industry publications, that Defendants' EIFS could not reasonably be installed in accordance with standard construction practices to avoid moisture intrusion and condensation within the walls on which the systems are installed.   Additionally, it appears that the Defendants did not adequately test EIFS before distributing it into the United States' residential home market.

47.   Based on information they had or of which they were aware, Defendants knew, or should have known, that EIFS was defective as designed.   Defendants also knew or should have known that EIFS would damage the homes and other structures to which it was applied. Accordingly, Defendants owed a duty to disclose to Plaintiffs and Plaintiff Class  members the

10

defective nature of Defendants' EIFS and to refrain from disseminating false information regarding EIFS.

48.     Notwithstanding this knowledge, Defendants engaged in a calculated pattern and practice of hiding the defective nature of EIFS. Defendants consistently have blamed moisture damage caused by EIFS on particular contractors or builders for allegedly "faulty" installation, or on allegedly faulty maintenance by home or building owners. Defendants have concealed and suppressed from Plaintiffs and the Plaintiff Class members the fact that, regardless of how they are installed or maintained, EIFS will fail and allow moisture intrusion because it is inherently defective.

49.     Due to their superior knowledge of the defects in EIFS, Defendants had, and continue to have, a duty to disclose to the public the defective nature of EIFS, and to not conceal and suppress such defective nature from the public, including Plaintiffs and members of the Plaintiff Class.

50.     To this day, Defendants refuse to disclose to the public, including Plaintiffs and the Plaintiff Class members, that, when exposed to common weather conditions that exist throughout the United States, EIFS traps moisture within the wall behind the synthetic stucco exterior, and that such EIFS could not and cannot practically or feasibly be installed in a fashion providing adequate protection from moisture. In fact, the vast majority of the Plaintiff Class is still unaware that Defendants' EIFS has failed and will continue to fail due to the systems' inherently defective nature.

51.     Defendants have ample motive to actively conceal the defective nature of their EIFS -- the market for EIFS has increased significantly, and the sale of EIF systems has contributed substantially to the Defendants' profits.

11

## Defendants Acted Through EIMA to Misrepresent
## and Conceal the Defective Nature of EIFS

52.     In 1981, due to the rapid growth of EIFS in the United States, several EIFS manufacturers met in Washington, D.C. to form an association called EIMA -- the EIFS Industry Manufacturers' Association.  The ostensible objectives of EIMA are: 1) to enhance EIFS through research and dissemination of technical information; 2) to encourage EIFS use with proper testing and evaluation; 3) to educate specifiers and potential users of EIFS materials; and 4) to increase market awareness and to market and promote EIFS to the design/building community.  Defendants Dryvit, STO, Parex, Corev, Finestone, Omega, Senergy, Thoro, Pleko and U.S. Gypsum were, during all or part of the applicable time period, members of EIMA.

53.     On behalf of the industry, EIMA provides information and prepares articles proclaiming EIFS "as the superior cladding for all building construction, both new and retrofit."

54.     During the applicable time period, through EIMA, the member manufacturer Defendants participated in making and disseminating misrepresentations concerning EIFS.  The members authorized, assented to, and/or ratified numerous false statements by EIMA, including, but not limited to, the following:

> a.     "Sophisticated engineering and chemical technology are brought together to provide performance benefits well beyond typical wall construction materials."
>
> b.     "Best of all, EIFS exteriors (which have demonstrated durability and value for decades in the U.S. and Europe) are affordable... when compared with the expense of tradition materials like brick or stone..."
>
> c.     "... EIFS are resilient enough to 'absorb' building movement and thus avoid cracking problems that are so common with stucco, concrete and brick exteriors."
>
> d.     "EIF systems require minimal maintenance."

12

e.    EIFS installs "quickly, easily," and "conveniently and efficiently."

f.    EIFS is a "solid and safe choice" such that building owners would "have the confidence that the product they have installed will perform successfully over the long-term, with the significant advantages of energy efficiency, durability, low maintenance and design flexibility." and

g.    "With a history of outstanding performance, EIFS is a wise choice for exterior cladding."

55.    As a result of these and other statements, the market for EIFS increased. Thousands of consumers purchased EIFS and had it installed on their homes, or purchased homes with EIFS. To date, millions of feet of EIFS have been installed nationwide.

**Defendants' Deficient Installation Specifications, and Their Failure to Train and Supervise So-Called "Certified Applicators," Further Exacerbated the Damage Caused by Defective EIFS**

56.    Defendants have promulgated training and application "standards" for EIFS that are unreasonably stringent, confusing, and otherwise inadequate. Defendants' installation instructions are confusing and overly exacting, making compliance with the instructions unreasonably difficult. Moreover, Defendants, and each of them, failed to adequately train and supervise so-called "certified applicators" (or similarly designated applicators or installers) such that, on a uniform basis, the application of EIFS to homes and other structures throughout the United States would be inadequate.

57.    Notwithstanding the above, representatives of the Defendants have sought to blame the defects described herein on the failure of contractors and/or particular applicators. But even homes with EIFS that were installed in substantial accordance with Defendants' application instructions and standards ultimately fail within a short period of time. Thus, applications that do not substantially comport with Defendants' specifications merely hasten what is an inevitable outcome: the failure of EIFS due to water intrusion.

13

58.     Rather than design a product that could be installed in a reasonable manner, or take steps to help ensure that their products were installed uniformly and effectively, Defendants sought to conceal the difficulty of installing their products.   In addition to blaming contractors and applicators for the EIFS defects, EIMA and other Defendants promoted EIFS in the marketplace, but did not disclose the unforgiving nature of EIFS.   Rather, the Defendants stressed the so-called ease with which EIFS could be installed, and the minimal care and maintenance required. In so doing, Defendants have sought to avoid their own responsibility for the defects in their products, have furthered their scheme to conceal these defects from consumers, and have increased their sales of these defective products.

## The Plaintiffs and Members of the Class Timely Filed

59.     The inherent defects in Defendants' systems, including defects in design and specifications supplied by Defendants as set forth above, are latent and self-concealing.   Failures first occur within the walls of the home, between the exterior EIFS facade and structural members and interior finishes, in the form of rotting and decayed wood, corroded steel, mold growth in and insect infestation of wood, masonry, drywall and insulation, and other structural damage which cannot be seen by simple observation from the outside.   Accordingly, exercising reasonable care, Plaintiffs and Plaintiff Class members cannot discover that such inherent defects exist.   By suppressing the dissemination of truthful information regarding the vulnerability of their EIFS to moisture, Defendants have actively foreclosed Plaintiffs and the Plaintiff Class members from learning of the systems' latent defects.

60.     By reason of the foregoing, the claims of Plaintiffs and Plaintiff Class members are timely under any applicable statute of limitations and/or statute of repose (as tolled by the filing of this class action complaint) by virtue of statute, constitutional rights under applicable state

14

constitutions and the Constitution of the United States, the discovery rule, the doctrine of fraudulent

concealment and other common law doctrines.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs seek to bring this case as a class action on behalf of themselves and all others

similarly situated in the United States as members of a proposed Plaintiff Class (or "Class"), defined

as follows:

> All persons who have an ownership interest in a home or other
> residential structure which contains an Exterior Insulation and Finish
> System manufactured and/or distributed by any of the Named
> Defendants and installed during the January 1, 1986 through
> December 31, 1995 Class Period.

Excluded from the Class are all claims for personal injury by Class members. Also excluded from the

Class are Defendants, any entity in which Defendants have a controlling interest, and their legal

representatives, heirs, and successors, and any Judge or Magistrate Judge or family member of the

Judge or Magistrate Judge assigned to hear this action.

62.     Numerosity. The members of the Class, being geographically dispersed and numbering

in the many thousands, are so numerous that joinder of all of them is impractical.

63.     Typicality. Plaintiffs' claims are typical of the Plaintiff Class members' claims, because

the EIFS of each Plaintiff has failed and will fail due to the systems' inherently defective nature,

causing financial loss to each Plaintiff.

64.     Adequacy of Representation. Plaintiffs can and will fairly and adequately represent

and protect the interests of the Class and have no interests that conflict with or are antagonistic to

the interests of Class members. Plaintiffs have retained attorneys competent and experienced in class

action and consumer defective products law and litigation. No conflict exists between Plaintiffs and

Class members because (a) the claims of the named Plaintiffs are typical of the Class members' claims;

15

(b) virtually all of the questions of law or fact at the liability stage are common to the Class and overwhelmingly predominate over any individual issues, such that by prevailing on their own claims, Plaintiffs necessarily will establish Defendants' liability as to all Class members; (c) without the representation provided by Plaintiffs herein, few if any Class members will receive legal representation or redress for their injuries; (d) Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action; and (e) Plaintiffs are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties.

65. <u>Common Questions of Law and Fact</u>. Virtually all of the issues of law and fact in this class action are common to the Class and include at least the following:

    a. Whether Defendants' EIFS was designed without the ability to prevent damage from expected moisture intrusion, and in fact trapped moisture, and thus when installed on residences or other structures caused wood decay and rot, steel corrosion, and other structural damage, in addition to promoting mold growth and insect infestation, resulting in risks to the health of the structures' occupants, such that Defendants' systems have an inherent design defect;

    b. Whether Defendants intentionally, recklessly or negligently falsely advertised and misrepresented their EIFS in national consumer and professional magazines in an effort to reach the Plaintiff Class, directly and indirectly, and to persuade the Class members to purchase or have Defendants' EIFS installed, or to purchase property on which such EIFS has been installed;

    c. Whether Defendants knew or became aware that EIFS was not properly designed, yet continued to manufacture, distribute, advertise, and market such systems without correcting the problems and while concealing the defective design of the systems from the public and the Plaintiff Class;

    d. Whether Defendants through written advertising and other representations, created express or implied warranties that were breached;

16

e.   Whether Defendants failed to insure that so called certified applicators in fact followed manufacturer instructions and performed their duties in a suitable manner;

f.   Whether Defendants, through advertising and other representations, fostered the expectations of the Plaintiff Class that Defendants' EIFS was not defective;

g.   Whether Defendants engaged in a pattern and practice of deceiving and defrauding the Plaintiff Class and suppressing the defective nature of Defendants' EIFS;

h.   Whether Defendants should be declared financially responsible for notifying all Class members of Defendants' defective EIFS and for the costs and expenses of repair and replacement of all such systems, with restitution and refunds to Plaintiffs and the Class members of all or part of the sums paid by them to purchase properties; and

i.   Whether Defendants should be ordered to disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of defective EIFS and/or to make full restitution to Plaintiffs and the members of the Class.

66.   <u>Superiority</u>. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that (a) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide instead of a repetitive individual basis; (b) the size of each Class member's individual property damage claim is too small to make individual litigation an economically viable alternative, such that few Class members have any interest in individually controlling the prosecution of separate actions; (c) class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members; (d) despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on

a cost-effective basis, especially when compared with repetitive individual litigation; and (e) no unusual difficulties are likely to be encountered in the management of this class action, in that (i) all questions of law or fact to be litigated at the liability stage are common to the Class; (ii) if Plaintiffs do not prevail at the classwide liability stage, the litigation in the trial court will be terminated; and (iii) if Plaintiffs do prevail at the liability stage, the parties may be able to reach a classwide settlement, thereby obviating any need for second-stage individual proceedings on damages and any affirmative defenses raised as to some individual Class member claimants.

## COUNT I
### (Fraud and Suppression)
### All Defendants

67.  Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

68.  Acting individually, and/or through EIMA, Defendants made numerous direct and indirect representations through national advertising and product information appearing in consumer and professional magazines regarding the superior durability and quality of their EIFS. These representations were materially false and misleading.

69.  Defendants' representations as set forth above regarding the durability, quality and characteristics of EIFS were willful or reckless misrepresentations of material fact made with the intent to induce Plaintiffs to act thereon, and Plaintiffs did, without knowledge of the falsity of the representations, directly or indirectly, justifiably act upon those willful misrepresentations to their injury, as evidenced by their purchase of Defendants' EIFS or purchase of property on which the systems were installed.

70.  Defendants either knew or should have known that EIFS was defective and would trap moisture, cause wood to rot and decay, cause steel to corrode and promote mold growth in and insect

18

infestation of wood, masonry, drywall and insulation, resulting in damage to the structure and possible risks to the health of the structures' occupants, and that the systems were otherwise not as they were represented to be by Defendants.

71.    Defendants were under a duty to disclose this information to Plaintiffs, because Defendants were in a superior position to know the true facts about the hidden defect in Defendants' EIFS and its known repercussions to the Plaintiffs upon purchase and installation, because the defects were latent and would not appear for several years, and because of the special circumstances associated with the use of the product on Plaintiffs' homes.

72.    As a result of Defendants' fraud and suppression of material facts, Plaintiffs acted to their detriment in purchasing the defective EIFS or homes on which the systems were installed, which they would not have purchased on the same terms had they been told the truth.

73.    As a result of Defendants' practices and furnishing of defective material, Plaintiffs have suffered injury in that they have purchased defective EIFS and installed it on homes, or purchased homes on which EIFS has been installed that is defective, and that such EIFS:

      a.    will trap moisture and cause wood to rot and decay and steel to corrode and will promote mold growth in and insect infestation of wood, masonry, drywall and insulation, resulting in risks to the health of the structures' occupants;

      b.    will cause damage to other parts of the structure; and

      c.    will cause Plaintiffs expense and labor in repairing and replacing the defective EIFS, diminution in value, other expenses, and lost time, all of which continues and will continue.

19

## COUNT II
### (Intentional, Reckless Or Negligent Misrepresentation)
### All Defendants

74.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

75.     Acting individually, and/or through EIMA, Defendants made numerous direct and indirect representations as set forth above regarding the superior durability, quality, and characteristics of Defendants' EIFS.   These representations were wilful, reckless or negligent misrepresentations of material facts.

76.     Defendants made these representations, either intentionally, without knowledge of their truth or falsity, or negligently, to induce Plaintiffs to act thereon, and Plaintiffs did, without knowledge of their falsity, directly or indirectly, justifiably and reasonably act upon these misrepresentations to their injury, as evidenced by their purchase of Defendants' EIFS or property on which the systems were installed.

77.     Defendants either knew or should have known that EIFS was defective and would trap moisture, cause wood to rot and decay, cause steel to corrode, and promote mold growth in and insect infestation of wood, masonry, drywall and insulation, resulting in structural damage and risks to the health of the structures' occupants, and that the systems were otherwise not as they were represented to be by Defendants, as alleged above.

78.     Defendants were under a duty to disclose this information to Plaintiffs, because Defendants were in a superior position to know the true facts about the hidden defect in Defendants' EIFS and its known repercussions to the Plaintiffs upon purchase and installation, because the defect was latent and would not appear for several years, and because of the special circumstances associated with the use of the product on Plaintiffs' homes.

20

79.     As a result of Defendants' wilful, reckless or negligent misrepresentation of material facts, Plaintiffs acted to their detriment in purchasing the defective EIFS or homes on which the systems were installed, which they would not have purchased on the same terms had they been told the truth.

80.     As a result of Defendants' practices and furnishing of defective materials, Plaintiffs have suffered injury, in that they have purchased defective EIFS and installed it on homes, or purchased homes on which defective EIFS has been installed, and that such EIFS:

      a.     will trap moisture and cause wood to rot and decay and steel to corrode and will promote mold growth in and insect infestation of wood, masonry, drywall and insulation, resulting structural damage and risks to the health of the structures' occupants;

      b.     will cause damage to other parts of the structure; and

      c.     will cause and continue to cause Plaintiffs expense and labor in repairing and replacing the defective EIFS, diminution in value, other expenses, and lost time, all of which continues and will continue in the future.

## COUNT III
### (Violation of Consumer Protection Statutes)
### All Defendants

81.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

82.     Plaintiffs and many Class members are consumers who purchased, for their personal use, Defendants' EIFS or homes on which EIFS has been installed. All fifty states and the District of Columbia have enacted statutes to protect consumers against unfair, deceptive or fraudulent business practices, unfair competition and false advertising. Almost every state allows consumers a private right of action under these statutes.

21

83.     By the misrepresentations and non-disclosure of material facts alleged above, Defendants deceived and continue to deceive consumers. This conduct constitutes unlawful, unfair, deceptive and fraudulent business practices within the meaning of state consumer protection statutes.

84.     In addition, Defendants' use of print media to promote the sale of defective synthetic stucco through false and deceptive representations as alleged above constitutes unfair competition and unfair, deceptive, untrue, or misleading advertising within the meaning of state consumer protection statutes.

85.     The above-described unlawful, unfair, deceptive and fraudulent business practices and false and misleading advertising and unfair competition by Defendants continue to present a threat to members of the public. Defendants have systematically perpetrated a fraud upon members of the public and have refused to admit that they are defrauding the public by this practice, or that Defendants intend Plaintiffs and Class members to be deceived for the sole purpose of enriching Defendants.

**COUNT IV**
**(Breach of Express Warranty)**
**Defendants Dryvit, STO, Shield Industries, Parex, Thomas, Continental,**
**Finestone, Senergy, U.S. Gypsum, Anthony and European Stucco**

86.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

87.     Defendants have breached their express warranties to Plaintiffs in that Defendants' EIF systems are not low maintenance systems; they will cause wood to rot and decay; they will cause steel to corrode; they will promote mold growth in and insect infestation of wood, masonry, drywall and insulation, resulting in risks to the health of the structures' occupants; they are not cost effective; and they otherwise do not perform as represented by Defendants.

22

88.    Plaintiffs have suffered direct and consequential injury because the EIFS purchased by Plaintiffs were defective, and Plaintiffs have installed the defective EIFS on their homes, or have purchased homes and other structures with defective EIFS, that will cause wood to rot and decay, steel to corrode, and will promote mold growth in and insect infestation of wood, masonry and insulation, resulting in risks to the health of the structures' occupants.  This property damage has caused and will cause Plaintiffs to incur expenses and lost time, which continues and will continue to be incurred in the future.

## COUNT V
### (Breach Of Implied Warranties)
### Defendants Dryvit, STO, Shield Industries, Parex, Thomas, Continental, Finestone, Senergy, U.S. Gypsum, Anthony and European Stucco

89.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

90.    Defendants have breached the implied warranty of merchantability in that EIFS is defective and not fit for the ordinary purposes for which such systems are used, that is, to provide a durable, low maintenance, suitable exterior insulation and protection for residences.

91.    Defendants have breached their implied warranties of fitness for a particular purpose in that EIF systems are defective and not fit for the purposes for which such systems are used, that is, to provide a durable, low maintenance, suitable exterior protection for residences.  Defendants were aware of the particular purpose for which their systems were intended, and Plaintiffs relied upon Defendants' skill and judgment in deciding to purchase Defendants' EIFS, or homes on which EIF systems were installed.

23

## COUNT VI
### (Strict Liability)
### Defendants Dryvit, STO, Shield Industries, Parex, Thomas, Continental, Finestone, Senergy, U.S. Gypsum, Anthony and European Stucco

92.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

93.     The EIFS manufactured by Defendants is expected to and did reach Plaintiffs and members of the Plaintiff Class without substantial change in the condition in which it was sold.

94.     The EIF systems were in a defective condition, unreasonably dangerous to Plaintiffs and members of the Plaintiff Class, when they left the Defendants' possession or control in that under normal conditions, usage and applications, they cause wood to rot and decay; they cause steel to corrode; and they promote mold growth in and insect infestation of wood, masonry, drywall and insulation, resulting in risks to the safety and health of the structures' occupants.

95.     Plaintiffs used the EIFS in a manner and for a purpose for which it was intended and which was foreseeable by the Defendants.

96.     The Defendants' EIFS are defective, in that they are incapable of being made safe for their ordinary and intended uses. The Defendants failed to provide Plaintiffs and the Plaintiff Class, either directly or indirectly, with adequate or sufficient warnings regarding the known or foreseeable risks and dangers inherent to this product.

97.     The activities engaged in by the Defendants have created and/or are creating an unreasonable risk of harm to Plaintiffs and members of the Plaintiff Class and to other persons to whom Plaintiffs and members of the Plaintiff Class are or may be liable. The Defendants' EIF systems are unsafe, cause structural damage to Plaintiffs' homes, and thereby create a serious risk of personal injury.

24

98.     As a direct and proximate result of the defective condition of the Defendants' EIFS, Plaintiffs and members of the Plaintiff Class have suffered and/or will suffer injury, which includes costs to inspect, repair, and/or replace their EIFS and other property damaged by the EIFS, in an amount to be determined at trial.

## COUNT VII
### (Negligence)
**Defendants Dryvit, STO, Shield Industries, Parex, Thomas, Continental, Finestone, Senergy, U.S. Gypsum, Anthony and European Stucco**

99.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

100.    The Defendants knew or should have known that EIFS, in its ordinary and foreseeable uses, would be used as protective siding in residential construction.

101.    The Defendants knew or should have known that the EIFS they designed, manufactured, treated, produced, tested, inspected, marketed and/or sold, in ordinary and foreseeable use, would fail to perform as intended.

102.    Due to their superior knowledge of the defects in EIFS, Defendants had and have a duty to disclose to the public the defective nature of EIFS.

103.    The Defendants failed to exercise reasonable care with respect to the design, development, manufacture, production, testing, inspection, marketing and/or sale of their EIFS by, among other things, failing to design and/or manufacture EIFS in a manner to ensure that under normal usage, conditions and applications, it would maintain its structural integrity and would not trap water; by failing to test or adequately test; by failing to warn or to warn adequately or sufficiently, either directly or indirectly, the foreseeable users of the defective nature of EIFS; by failing to represent accurately to the Plaintiffs, whether directly or indirectly, that EIFS would cause

25

structural damage to their homes; and by failing to remove or recommend the removal of EIFS from the market, or to undertake the responsibility to test, remove, repair or replace EIFS.

104.    The Defendants' negligence as set forth above directly and proximately caused the harm suffered and/or being suffered by Plaintiffs and members of the Plaintiff Class.

105.    As a direct and proximate result of the Defendants' negligence, Plaintiffs and members of the Plaintiff Class have suffered and/or will suffer injury, and are entitled to damages including costs to inspect, repair, and/or replace their EIFS and other damaged property, in an amount to be determined at trial.

## COUNT VIII
### (Declaratory Judgment And Injunctive Relief)
### Defendants Dryvit, STO, Shield Industries, Parex, Thomas, Continental, Finestone, Senergy, U.S. Gypsum, Anthony and European Stucco

106.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs.

107.    Plaintiffs seek a declaratory judgment that:

    a.    Defendants must disgorge, for the benefit of the Class, all or part of their ill-gotten profits received from the sale of their defective synthetic stucco, and/or make full restitution to the Plaintiffs and the members of the Plaintiff Class;

    b.    The terms of the express, written warranties provided by Defendants are unconscionable because the warranties do not provide minimum adequate remedies as required by law;

    c.    The exclusion of the implied warranty of merchantability is unconscionable under the circumstances because, among other things, Defendants are selling their EIFS without disclosing the defective nature of the systems and then denying Class members an adequate minimum remedy as required by law;

    d.    Any "release" signed by any Class Member for such damages is null and void; and

26

e. The express warranties' limitation upon remedies, the exclusion of implied warranties and the concealment and the suppression of the defective nature of the product is unconscionable because these acts constitute a deceptive and fraudulent trade practice under the circumstances.

PLAINTIFFS DEMAND A JURY TRIAL.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court to hold Defendants jointly and severally liable for the conduct complained of herein, to enter judgment against Defendants and in favor of Plaintiffs, and to award the following relief:

A. declaring Defendants financially responsible for notifying all Class members of Defendants' defective EIFS and for the costs and expenses of repair and replacement of all such stucco, as well as the lost value of Class members' homes and other structures, with restitution and refunds to Plaintiffs and the Class members of all or part of the sums paid by them to purchase properties with Defendants' EIFS;

B. ordering Defendants to disgorge, for the benefit of the Class, all or part of their ill-gotten profits received from the sale of Defendants' defective EIFS, and/or to make full restitution to Plaintiffs and the members of the Class;

C. declaring the limitations of remedies and the exclusion of the implied warranties or merchantability and fitness for a particular purpose to be unlawful and unconscionable and unenforceable;

D. enjoining Defendants from committing the acts complained of herein, consisting of manufacturing, distributing, advertising and marketing Defendants' defective EIFS without disclosing the systems' defective nature, from attempting to limit Class members' remedies and to exclude the implied warranties, from fraudulently concealing and suppressing from Class members the true nature of the defects in Defendants' EIFS when contacted by Class members after installation, and from advising Class members that the cause of the problems with Defendants' EIFS is improper installation or maintenance;

E. declaring that Defendants have breached the express and implied warranties provided with the purchase of Defendants' EIFS;

F. awarding each Class member compensatory and punitive damages, and other damages, for the acts complained of herein;

27

G.   awarding the Class costs and attorneys' fees against Defendants, as allowed by law, and/or awarding counsel for the Class attorneys' fees from the common fund created hereby; and

H.   granting such other or further relief as may be appropriate under the circumstances.

Dated: April 30, 1996                    LAW OFFICES OF MARVIN K. BLOUNT, JR.

                                         By: _Marvin Blount_____
                                              Marvin K. Blount, Jr.
                                              Jennefer J. Cross
                                         400 West First Street
                                         Greenville, NC 27835
                                         Telephone: (919) 752-6000

Dated: April 30, 1996                    DOFFERMYRE, SHIELDS, CANFIELD,
                                              KNOWLES & DEVINE

                                         By: _Everette Doffermyre by MB.___
                                              Everette L. Doffermyre
                                              Laura Shamp
                                         1600 The Peachtree
                                         1355 Peachtree Street
                                         Atlanta, GA 30309
                                         Telephone: (404) 881-8900

                                         **Co-Lead Counsel for Plaintiffs**

                                         Charles F. Blanchard
                                         BLANCHARD, JENKINS & MILLER, P.A.
                                         3600 Glenwood Avenue
                                         Suite 103
                                         Raleigh, NC 27612
                                         Telephone: (919) 787-1631

                                         **Liaison Counsel for Plaintiffs**

28

William M. Audet
LIEFF, CABRASER, HEIMANN
& BERNSTEIN
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3999
Telephone: (415) 956-1000

Michael D. Hausfeld
Gary Mason
COHEN MILSTEIN HAUSFELD
& TOLL
1100 New York Avenue
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600

Joe McLeod
THE McLEOD LAW FIRM, P.A.
705 First Citizens Bank Building
109 Green Street
P. O. Box 1539
Fayetteville, NC 28302
Telephone: (910) 323-1425

Steven Berman
Clyde Platt
HAGENS & BERMAN
1301 Fifth Avenue, Suite 2929
Seattle, WA 98101
Telephone: (206) 623-7292

Samuel D. Heins
Kent M. Williams
HEINS MILLS & OLSON, P.L.C.
608 Second Avenue South, Suite 700
Minneapolis, MN 55402
Telephone: (612) 338-4605

Michael Worel
CUNNINGHAM, BOUNDS, YANCE,
CROWDER & BROWN
1601 Dauphin Street
P. O. Box 66705
Mobile, AL 36660
Telephone: (334) 471-6191

## Plaintiffs' Steering Committee

Gordon Ball
LAW OFFICE OF GORDON BALL
550 West Main Avenue, Suite 750
Knoxville, TN 37902
Telephone: (423) 525-7028

Richard T. Dorman
McRIGHT, JACKSON, DORMAN,
MYRICK & MOORE
1100 First Alabama Bank Building
106 St. Francis Street
Mobile, AL 36652
Telephone: (334) 432-3444

Auley M. Crouch, III
CROUCH & KEETER, L.L.P.
202 North Third Street
P. O. Box 4
Wilmington, NC 28401
Telephone: (910) 762-0595

Joel Rhine
LEA CLYBURN & RHINE
8 South Seventh Street
Wilmington, NC 28401
Telephone: (910) 772-9960

## Additional Plaintiffs' Counsel

Case 5:96-cv-00287-BR   Document 10   Filed 04/30/96   Page 29 of 32

# CERTIFICATE OF SERVICE

I, Marvin K. Blount, Jr., of counsel for Plaintiffs, do hereby certify that the foregoing First Amended and Consolidated Class Action Complaint for Damages and Equitable Relief was served upon counsel for Defendants by mailing a copy thereof, postage prepaid, deposited in the United States Post Office, Greenville, North Carolina, addressed to the following:

W. Andrew Copenhaver
WOMBLE, CARLYLE, SANDRIDGE & RICE
Attorneys for STO Corporation, Dryvit Systems, Inc., and Parex, Inc.
Post Office Drawer 84
Winston-Salem, NC 27102

Stuart L. Edgerton
PATTERSON, DILTHEY, CLAY & BRYSON, L.L.P.
Attorneys for Continental Stucco Products, Inc.
P.O. Box 2258
Wilmington, NC 28402-2258

Donald Britt, Jr.
THE LAW FIRM OF DONALD BRITT
Attorneys for Thomas Waterproof Coatings Co.
20 South Fifth Avenue
Wilmington, NC 28401

Douglas F. McIntosh
CROSSLEY, MCINTOSH, PRIOR & COLLIER
Attorneys for Corev America, Inc.
616 Market Street
Post Office Drawer 740
Wilmington, NC 28402-0740

Daniel K. Bryson
MAUPIN, TAYLOR, ELLIS & ADAMS, P.A.
Attorneys for Finestone Corporation
Suite 500
3200 Beachleaf Court
Post Office Drawer 19764
Raleigh, NC 27619-9764

30

Rodney A. Dean
DEAN & GIBSON
Attorneys for Omega Products Corporation
Suite 402, Cameron Brown Building
301 South McDowell Street
Charlotte, NC 28204-2686

Stacey M. Lynch
ROGERS, TOWNSEND & THOMAS
Attorneys for Pleko Products, Inc.
Post Office Box 100200
Columbia, South Carolina 29202-3200

Peter R. Spanos
SPANOS & ROCHELLE
Attorneys for EIFS Industry Manufacturers' Association ("EIMA")
Suite 2020, 400 Colony Square
1201 Peachtree Street, N.E.
Atlanta, Georgia 30361

Corporation Trust Company
Registered Agent for United States Gypsum Company
1209 Orange Street
Wilmington, Delaware 19801

Peter Lawson Kennedy
ADLER POLLOCK & SHEEHAN
Attorneys for Senergy, Inc., and Thoro System Products, Inc.
2300 Hospital Trust Tower
Providence, RI 02903

Gregory T. Jones
Registered Agent for Shield Industries, Inc.
6445 Powers Ferry Rd., Suite 265
Atlanta, GA 30339

31

Corporation Trust Company
Registered Agent for Anthony Industries, Inc.
1209 Orange Street
Wilmington, Delaware 19801


Franklin T. Ly
Registered Agent for European Stucco
2507 Wind Foilage Court
Norcross, Georgia 30071


This the 30th day of April, 1996.

MARVIN K. BLOUNT, JR.

32