UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

**FILED**

OCT 30 1996

DAVID W. DANIEL, CLERK
U.S. DISTRICT COURT
E. DIST. NO. CAR

)
)
)
IN RE: STUCCO LITIGATION    )    Master File No. 5:96-CV-287-BR(2)
)
)
_____)

THIS DOCUMENT RELATES TO:

    ALL CASES

## MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

    Defendants Dryvit Systems, Inc., Thoro Systems Products, Inc., Senergy, Inc., Parex, Inc. and Sto Corp. hereby submit this Memorandum in Opposition to Plaintiffs' Motion for Class Certification.

# TABLE OF CONTENTS

Page

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Plaintiffs Have Not Satisfied the Requirements of Rule 23(b)(3) . . . . . . . . . . . . 4

           1.    Individual Questions of Fact Predominate Because of the Role of Third Parties Involved in Home Construction . . . . . . . . . . . . . . . . . . . . . . 5

                  a.    Determination of Liability Requires Assessment of The Role of Third Parties in Each Individual Claim . . . . . . . . . . . . . . . . . . 6

                  b.    Determination of Causation Requires Assessment of The Role of Third Parties in Each Individual Claim . . . . . . . . . . . . . . . . . . 7

                  c.    Determination of Comparative Fault Requires Assessment of The Role of Third Parties in Each Individual Claim . . . . . . . . . . 8

                  d.    Other EIFS Litigation Proves the Materiality of the Conduct of Third Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           2.    Damage Claims Raise Individual Issues Which Predominate . . . . . . . . 11

           3.    Reliance Requirements Raise Individual Issues Which Predominate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           4.    Given Substantial Differences in the Applicable Law of the Fifty States, Common Questions Do not Predominate and a Class Action is Not a Superior Method of Adjudication . . . . . . . . . . . . . . . . . . . . . . . 14

                  a.    Variations in State Negligence Law are Unmanageable . . . . . . . 16

                   b.    Variations in State Consumer Protection Statutes are Unmanageable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                   c.    Variations in the Statutes of Repose are Unmanageable . . . . . . . 19

                   d.    Variations in State Punitive Damage Law are Unmanageable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5. Use of the Subclasses Proposed by Plaintiffs Would Not Render a Nationwide Class Action Manageable .............................. 21

B. Plaintiffs Have Not Satisfied the Requirements of Rule 23(a) .............. 24

1. Numerosity Has Not Been Established Because Plaintiffs Lack Standing .................................................................. 25

2. Plaintiffs' Claims Are Not Typical To Each Other Or To Putative Class Members ............................................................. 26

3. Representative Plaintiffs Do Not Adequately Represent Members of the Proposed Class ....................................................... 27

   a. Plaintiffs Cannot or Will Not Pursue Potentially Crucial Claims ............................................................... 27

   b. There are Material and Irreconcilable Differences Among the Interests of Class Members ............................................. 29

III. CONCLUSION ........................................................................ 30

ii

I.    INTRODUCTION

The vast majority of courts that have considered the certification of a nationwide class action in state law product liability litigation have refused to certify a class because (i) individual issues predominated among members of the class, and/or (ii) application of differing state law standards was not practical. Both of these reasons for denying class certification apply in this case. Consequently, this case is clearly distinguishable from the few cases cited by plaintiffs in which nationwide product liability class actions have been certified.

The key feature that distinguishes this case from the cases on which plaintiffs rely is the role of third parties such as builders, contractors, EIFS applicators, architects, window manufacturers and others involved in the construction of each individual home. Plaintiff's own evidence establishes that water intrusion on an EIFS clad house is "typically" caused by the negligence of such third parties. Defendants will present evidence of the negligence of such third parties (which will be unique as to each plaintiff's home), and the trier of fact will be required to assess that evidence in deciding the issues of liability and causation. With respect to the claim of each member of the putative class, the trier of fact will be required to assess the conduct of third parties in deciding the issues of negligence, comparative negligence, and causation, applying legal standards that vary from state to state. Plaintiffs' Memorandum, in ostrich-like fashion, simply ignores these crucial issues.[1]

Another factor that weighs against class certification is the impossibility, from a case management perspective, of applying the substantive law of all fifty states. The applicable law of the states varies substantially, and there is no practical way for the Court to apply the differing requirements of state law. The subclasses proposed by plaintiffs fail to even address most of the relevant differences

---

[1] Other individual issues that can only be resolved through an individual trial for each one of the hundreds of thousands of members of the purported class include damages and reliance on the alleged misrepresentations by defendants.

1

in state law, including comparative negligence. Moreover, the proposed subclasses would create a confusing morass of class member groups that would further complicate, rather than simplify, this litigation.

Four additional factors compel a ruling against class certification in this case. First, plaintiffs lack standing to assert a claim against all defendants because they do not have EIFS products manufactured by all defendants on their homes. Because plaintiffs lack standing individually, they lack standing to assert claims representatively on behalf of the proposed class. Second, plaintiffs are unable to pursue strict liability claims, and plaintiffs are unwilling to assert claims for fraud. Plaintiffs cannot serve as adequate class representatives if they are unwilling or unable to pursue claims which are potentially central to the interests of the purported class. Third, due to numerous differences in the potential claims of homeowners, plaintiffs' claims are not typical to each other or to the claims of putative class members. Fourth, there is an irreconcilable conflict of interest between plaintiffs (who allege to have suffered actual damage to their homes), and other members of the purported class (most of whom have not suffered any actual damage). Such conflicts have led other courts to deny class certification under circumstances similar to this case.

## II.    STATEMENT OF FACTS

Plaintiffs' Memorandum contains a statement of "common operative facts" that is really a jury argument on the merits, supported largely by quotations taken out of context and liberal interpretation of documents.[2] Defendants will not waste precious space responding. Suffice it to say that defendants

---

[2] Space permits two examples. First, citing their exhibit 1, plaintiffs argue that all EIFS are identical products with the same generic components and performance attributes. Plaintiffs' Memorandum at pp. 1-2. Plaintiffs' exhibit 1 directly contradicts these assertions. That document reflects that EIFS products vary in many respects (including base coat thickness, thickness of reinforcing mesh, manufacturer recommendations, thickness of protective finish coats, textures and colors), and concludes that "the components of each manufacturer's proprietary . . . systems may vary." Second, citing their exhibit 2, plaintiffs state that there are occasions where water may enter the EIFS system. Plaintiffs' Memorandum at p. 2. Exhibit 2, however, states (at p. 7) that "a properly designed and installed EIFS system will provide a barrier to water entry into the system." Further, the document

deny plaintiffs' allegations, and that it will be for the trier of fact to determine where the truth lies.

Certain facts that are relevant to class certification are established by plaintiffs' own evidence. Plaintiffs' own expert acknowledges that water intrusion in EIFS clad houses "typically" occurs due to:

- *Failed, improperly applied, or missing sealants in joints at the perimeter of wall openings such as windows.*
- *Frame corners of windows* [that leak].
- *Discontinuities and gaps in flashing roof edges/wall junctures.*
- *Miscellaneous details such as framed balcony decks and chimney details.*[3]

Furthermore, plaintiffs' evidence as well as defendants' evidence establish that in the named plaintiffs' homes that have suffered damage, the water intrusion was caused by missing or improperly applied sealants, leaky windows, missing or improperly installed flashings and kick-outs on roofs, balconies, or decks, and other deficiencies in construction details.[4] All of these construction deficiencies are the responsibility of third parties.[5] Finally, plaintiffs' own expert has acknowledged that water does not

_____

makes clear (at p. 7) that water entry "may be due to improper design or installation of the EIFS system or failure of unrelated building appurtenances such as flashings, window trim, etc."

[3] SG&H Report (Exhibit I to the Affidavit of Stephen S. Ruggiero) at p.17.

[4] See the following inspection reports produced by plaintiffs in discovery (all reports are included in Plaintiffs' Exhibit 33): Coastal Homes Inspections report for Baker home, dated February 18, 1996 ("Baker Insp. Report #1"); Blue Chip Builders report for Baker home, dated April 5, 1994 ("Baker Insp. Report #2"); Shelby Insurance Group claim denial letter, dated July 20, 1994 ("Baker Insp. Report #3"); Glenn Davis report for Burton home, dated January 6, 1996 ("Burton Insp. Report"); Dryvit report for Campbell home, dated January 25, 1996 ("Campbell Insp. Report #1"); Prime South report for Edmondson home, dated December 18, 1995 ("Edmondson Insp. Report #2"); Dryvit report for Entwistle home, dated February 13, 1995 ("Entwistle Insp. Report #1"); R.V. Buric report for Todd home, dated November 15, 1995 ("Todd Insp. Report #1"); Southeastern Testing Services report for Todd home, dated February 12, 1996 ("Todd Insp. Report #2"); see also Defendants' inspection reports by Accident Reconstruction, Inc. ( Exhibit X); Affidavit of Russell J. Kenney ("Kenney Aff.") ¶¶ 4, 10, 20; Affidavit of Kenneth M. Lies ("Lies Aff.") ¶¶ 4, 15, 17, 18, 22, 26; Deposition of J.B. Graham, III, dated August 20, 1996 ("Graham Dep. Vol. I") (Exhibit Q) pp. 55, 57-58; Deposition of J.B. Graham, III, dated August 21, 1996 ("Graham Dep. Vol. II") (Exhibit R) pp. 72-73, 113, 118-19, 138-39, 151, 160-62; Deposition of Stephen S. Ruggiero ("Ruggiero Dep.") (Exhibit A) pp. 60, 68, 70, 77, 80-81, 87-88.

[5] Kenney Aff. ¶ 4; Lies Aff. ¶¶ 10, 11, 14, 17, 26.

3

intrude through the EIFS cladding itself.[6] J.B. Graham, III, Director of Inspections for New Hanover County, has echoed this observation.[7] These are the facts that are crucial to the issue of class certification and that are undisputed in this case.

## III.    ARGUMENT

### A.    Plaintiffs Have Not Satisfied the Requirements of Rule 23(b)(3)

The parties moving for class certification bear the burden of proof. In re American Medical Systems, Inc., 75 F.3d 1069, 1086 (6th Cir. 1996); Windham v. American Brands, Inc., 565 F.2d 59, 64 n.6 (4th Cir. 1977), cert. denied, 435 U.S. 968 (1978). The moving parties must meet all requirements of Rule 23(a), and must also establish grounds set forth in one subdivision of Rule 23(b). Lukenas v. Bryce's Mountain Resort, Inc., 538 F.2d 594, 595 n.2 (4th Cir. 1976). Plaintiffs in this case seek certification under subdivision (b)(3), which requires proof that common questions of law and fact predominate over questions affecting only individual class members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3), Fed. R. Civ. P. The predominance requirement of Rule 23(b)(3) means that class certification is proper only if the resolution of common questions "overshadows all other issues." Stott v. Haworth, 916 F.2d 134, 145 (4th Cir. 1990). This is so because "when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." Zimmerman v. Bell, 800 F.2d 386, 390 (4th Cir. 1986). Plaintiffs cannot meet their burden under Rule 23(b)(3).

---

[6] Ruggiero Dep. (Exhibit A) p. 51. See also Kenney Aff. ¶ 11, Lies Aff ¶ 23(f), 25, 26. Mr. Ruggiero contends that cracks in the EIFS at re-entrant corners are a source of water intrusion. SG&H Report at p. 16. He acknowledges, however, that certain construction procedures minimize the potential for cracking at re-entrant corners, and that at least some EIFS manufacturers incorporate those procedures in their installations instructions. Ruggiero Dep. (Exhibit A) pp. 49-54. Whether such cracks caused water intrusion in a plaintiff's home, and, if so, whether the cracks were due to failure to follow the manufacturer's installation instructions) would be an individual issue with respect to each home.

[7] Graham Dep. Vol. II (Exhibit R) pp. 129-130.

Individual Questions of Fact Predominate Because of the Role of Third Parties Involved in Home Construction

One critical factor distinguishes this case from the handful of product liability cases cited by plaintiffs in which a nationwide class has been certified. In this case, the claim of every class member will require an assessment by the trier of fact of the conduct of numerous third parties such as builders, contractors, subcontractors, EIFS applicators, architects, window manufacturers and others involved in the construction of each home. The role of these third parties is relevant to two elements of the plaintiffs' claims: liability and causation. In addition, in comparative fault jurisdictions, the trier of fact must assess the conduct of these third parties in order to allocate fault.

Plaintiffs contend that EIFS are inherently defective because they do not provide a drainage system for water that may enter behind the EIFS.[8] Defendants contend that a drainage system is not required because EIFS are surface-sealed exterior claddings, which, properly installed, will not allow penetration of sufficient water to cause damage to the substrate.[9] In response, plaintiffs contend that water intrusion is "inevitable."[10] Plaintiffs treat this bold assertion by their expert as if it were an undisputed fact. Instead, it is a hotly contested issue to be decided by the trier of fact.

Plaintiffs' expert acknowledges that water intrusion in EIFS clad houses is "typically" caused by improper or missing sealants in joints at wall openings such as windows, leaky windows and discontinuities and gaps in flashing at roof edges/wall junctures, balconies, decks, and chimneys.[11] Plaintiffs' argument ignores the crucial fact that each of these "typical" sources of water intrusion is:

---

[8] Plaintiffs' Memorandum at pp. 2-3; SG&H Report.

[9] Kenney Aff. ¶¶ 3, 7, 9, 18; Lies Aff. ¶¶ 16, 23, 24, 25.

[10] SG&H Report at 16.

[11] SG&H Report at 17. Similar admissions regarding the typical causes of water intrusion in EIFS clad homes were made by another of plaintiffs' experts. Deposition of James Liles ("Liles Dep.") (Exhibit B) pp. 40-41, 48, 74.

5

1)      a violation of the North Carolina Building Code, compliance with which is the responsibility of the architects, contractors and other building professionals;

2)      in direct contravention of the EIFS manufacturers' installation instructions; and/or

3)      contrary to the standards of the construction industry.[12]

Third party conduct of this type is relevant to the issues of liability, causation and comparative fault. The jury will be required to assess the conduct of such third parties with respect to each plaintiff's claim.

        a.      Determination of Liability Requires Assessment of The Role of Third Parties in Each Individual Claim

Under North Carolina law, a violation of the Building Code is negligence per se. Oates v. Jag, Inc., 314 N.C. 276, 333 S.E.2d 222 (1985). Evidence that water intrusion in an individual plaintiff's home was caused by a violation of the building code, therefore, would raise issues of foreseeability and insulating negligence with respect to the negligence claim. See e.g., Weavil v. Myers, 243 N.C. 386, 391, 90 S.E.2d 733, 737-38 (1956) (no duty to anticipate negligence of others); McLaney v. Anchor Motor Freight, Inc., 236 N.C. 714, 718-19, 74 S.E.2d 36, 39 (1953) (insulating negligence). Furthermore, evidence that third party negligence was the cause of the water intrusion would support a finding by the trier of fact that EIFS are not defective (i.e. that water intrusion sufficient to cause damage is not "inevitable," and that EIFS are fit for their ordinary purposes), and that the defendants are therefore not liable for breach of warranty or misrepresentation.

N.C. Gen. Stat. § 99B-4(1) provides that, in a product liability action, the manufacturer of a product is not liable if the use of the product was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product, if the user, in the exercise of

---

[12] See Kenney Aff. ¶¶ 4, 10, 21; Lies Aff. ¶¶ 12, 14, 17, 26; see also Baker Insp. Report #2; Baker Insp. Report #3; Burton Insp. Report; Todd Insp. Report #1; Todd Insp. Report #2. Section R-114 of the North Carolina Residential Building Code (Exhibit C) places responsibility for compliance with the building code on the "contractors," defined as "every person who shall contract for the installation or repairs of a building system . . . ."

reasonable care should have known of such instructions or warnings. In this case, the "users" of the defendants' products are the contractors, builders and EIFS applicators, and their failure to follow the manufacturer's instructions may relieve the defendants from liability to the plaintiffs. This statutory defense raises issues with respect to the users' conduct that would be unique to each individual claim.

In Caruso v. Celsius Insulation Resources, Inc., 101 F.R.D. 530 (M.D. Pa. 1984), the court found the role of third parties significant in denying class certification:

> The intervention of third-party installers who mixed the products, third-party middlemen and suppliers, and the possible interaction of defendant's product with other materials that also contain formaldehyde and are already inside structures obscures the "common nucleus of operative facts" and clouds any finding on a class basis of strict liability, the basis of plaintiff's second cause of action.

Id. at 536. In this case the role of third parties similarly clouds the determination of liability.

> b.     Determination of Causation Requires Assessment of The Role of Third Parties in Each Individual Claim

Causation is a necessary element of each cause of action that plaintiffs allege.[13] As discussed above, the negligence of builders, contractors and others is almost always the cause of water intrusion in EIFS clad homes. In order to determine the issue of causation on each individual claim, therefore, it will be necessary for the trier of fact to analyze separately the conduct of these third parties. Federal courts routinely deny class certification where the evidence of causation varies significantly among class members, because the individual issues overshadow any common questions. See, e.g., In re Dalkon Shield, supra, 693 F.2d at 853-56 (common questions insignificant compared to the need for individual

---

[13] See Thomasville v. Lease-Afex, Inc., 300 N.C. 651, 656, 268 S.E.2d 190 (1980) (negligence); Torrance v. AS & L Motors, 119 N.C. App. 552, 555, 459 S.E.2d 67 (1995), rev. denied, 341 N.C. 424, 461 S.E.2d 768 (1995) (fraud); Maybank v. Kresge Co., 46 N.C. App. 687, 693, 266 S.E.2d 409 (1980) (breach of warranty); Ellis v. Smith-Broadhurst, Inc., 48 N.C. App. 180, 184, 268 S.E.2d 271 (1980), aff'd in part and modified in part on other grounds, 302 N.C. 129, 273 S.E.2d 681 (1981) (unfair trade practices).

7

trials on causation and fault).[14]

        c.     Determination of Comparative Fault Requires Assessment of The Role of Third Parties in Each Individual Claim

      The inclusion of comparative fault jurisdictions in this purported class action creates individual issues that predominate and that render the case unmanageable as a class action.[15] Plaintiffs assert that contributory and comparative negligence will not be an issue because there was nothing any third party could have done to prevent the damage. Plaintiffs' Memorandum at pp. 22-23, fn. 14. Here again, plaintiffs treat a hotly contested issue as if it were an undisputed fact. As discussed above, the record contains substantial evidence, including plaintiffs' own evidence, that the negligence of third parties was a proximate cause, if not the only cause, of plaintiffs' alleged damages. Under such circumstances, defendants are entitled to submission of the issue of comparative fault to the jury. This issue can only be decided on an individual basis with respect to each purported class member's claim.

      Under the nationwide class action sought by plaintiffs, the law of all states that apply comparative fault would be applicable. The law of comparative fault is by no means uniform. In some comparative fault jurisdictions potentially liable third parties must be joined in order for the jury to allocate fault. See,

---

[14] Class certification is improper in such cases because individual causation issues and affirmative defenses render a class unmanageable. See, e.g., Davenport v. Gerber Products Co., 125 F.R.D. 116, 120 (E.D. Pa. 1989) (nursing bottles); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 266 (S.D. Cal. 1988) (flea powder); Raye v. Medtronic Corp., 696 F. Supp. 1273, 1275 (D. Minn. 1988) (pacemakers); In re Tetracycline Cases, 107 F.R.D. 719, 731-36 (W.D. Mo. 1985) (tetracycline); Caruso, supra, 101 F.R.D. 537 (insulation); Mertens v. Abbott Laboratories, 99 F.R.D. 38, 41-42 (D.N.H. 1983) (DES); Pearl v. Allied Corp., 102 F.R.D. 921, 923 (E.D. Pa. 1984) (insulation); Ryan v. Eli Lilly &Co., 84 F.R.D. 230, 233 (D.S.C. 1979) (DES); Payton v. Abbott Labs, 100 F.R.D. 336 (D. Mass. 1983) (same).

[15] The Judicial Panel on Multidistrict Litigation has already transferred to this Court cases brought by building owners in South Carolina and Florida -- states that recognize comparative fault. See Fla. Stat. § 768.81; Chesterton v. Fisher, 655 So.2d 170, 172 (Fla. Ct. App. 1995); Nelson v. Concrete Supply Co., 399 S.E.2d 783, 784 (S.C. 1991) (non-products liability case, applying comparative negligence to causes of action arising after July 1, 1991).

e.g., Eberly v. A-P Controls, Inc., 572 N.E.2d 633 (Ohio 1991);[16] Baldwin v. Waterloo, 372 N.W.2d 486 (Iowa 1985).[17]  Other comparative fault jurisdictions do not require that all potentially responsible parties be joined.  In many of these states, however, the fault of all potentially liable parties (including absent parties) must be decided in every case, and the plaintiff can only recover from the named defendants based on their respective percentage of fault.[18]  In other states, only the fault of the named defendants is considered by the jury.[19]  Variation in state law alone, therefore, would render this case unmanageable as a class action.

More importantly, plaintiffs have not proposed and cannot propose to this Court a case management plan whereby determination of the issue of defendant's liability on a class-wide basis will not require subsequent individual trials on the comparative fault of third parties.  The necessity of subsequent trials on the comparative fault of third parties is fatal to class determination.  The defendants' Seventh Amendment right to a jury trial includes the right to have the issues of fact decided by the first jury impaneled to hear them, and not reexamined by another finder of fact.  In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1303 (7th Cir. 1995), reh'g. en banc denied, 1995 U.S. App. LEXIS 9693 (7th Cir.

---

[16] Given the substantial and varied issues under the law of the fifty states raised by plaintiffs' motion for class certification, copies of out of state cases have not been attached to this Memorandum. However, if the Court would like a copy of any or all of the out of state cases cited herein, counsel will promptly provide a copy.

[17] In states following this view, all liability is determined in a single action and any defendant that is not a party to such an action escapes liability.  See, e.g., Albertson v. Volkswagenwerk Aktiengesellschaft, 634 P.2d 1127, 1131 (Kan. 1981).

[18]  In these states, the named defendants can assert the negligence of absent defendants to defeat or diminish the plaintiff's claim.  See, e.g., Wilson v. Gillis, 731 P.2d 955, 956 (N.M. Ct. App. 1986); cert. denied, 731 P.2d 373 (N.M. 1987); Bowman v. Barnes, 282 S.E.2d 613, 619 (W.V. 1981).

[19] See, e.g., Dunmore v. Eagle Motor Lines, 560 So.2d 1261, 1263 (Fla. 1990); Samuelson v. McMurtry, 1996 WL 507314 (Tenn. Ct. App. 1996) (Exhibit T).

Case 5:96-cv-00287-BR   Document 132   Filed 10/30/96   Page 12 of 34

Apr. 27, 1995), cert. denied, 116 S.Ct. 184 (1995) (citing Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 550, 51 S.Ct. 513. 515. 75 L.Ed. 1188 (1931)). Separation of the trial of defendants' liability from the trial of third parties comparative fault would violate this fundamental right. As the Seventh Circuit recognized in Rhone Poulenc, comparative negligence entails a comparison of the degree of negligence of the defendants and the joint tortfeasors. The subsequent determination of comparative fault would, therefore require a second, third or ten thousandth jury to re-examine the issue of defendants' fault. 51 F.3d at 1303.[20]

### d. Other EIFS Litigation Proves the Materiality of the Conduct of Third Parties

The arguments advanced by plaintiffs' counsel in this litigation -- that the conduct of third parties is not material to individual claims -- is inconsistent with the positions taken in other cases. Filed as Exhibit D is a list of 42 lawsuits in which EIFS manufacturers have been sued on claims that are substantially identical to those raised in this case. In each of those cases, the plaintiffs have also asserted claims against the applicators, contractors, architects, window manufacturers and others involved in the construction of their homes, alleging that their negligence was a cause of the water intrusion damage to plaintiffs' homes. This list includes a lawsuit filed by named plaintiffs in Todd, et al. v. Dryvit, et al., Case No. 7-95-CV-188-F(1), the first class action lawsuit filed in this Court,[21] in which plaintiffs allege that the builders were negligent in "failing to caulk around exterior penetrations," "failing to properly install flashing," and "installing materials in violation of the manufacturer's instructions."[22] The

---

[20] Plaintiffs' suggestion that "[a]lternatively the court can certify for trial one or more issues relating to liability," runs afoul of the Seventh Amendment for the same reasons. Indeed, this "alternative" was the case management plan that was rejected in Rhone-Poulenc.

[21] Todd v. Eddie Evans Construction, et al., Case No. 96 CVS 02148, General Court of Justice, Superior Court Division, State of North Carolina, County of New Hanover, filed June 26, 1996 [Complaint filed as Exhibit E] by named plaintiffs Thomas and Virginia Todd.

[22] Complaint in Todd v. Eddie Evans Construction, et al. (Exhibit E), at ¶ 22.

10

list also includes numerous cases in which the plaintiffs are represented by counsel for plaintiffs in the consolidated cases before this Court, including a case in which the plaintiff is a member of one of the firms representing plaintiffs in the class action litigation. Furthermore, other named plaintiffs in this class action litigation have asserted or intend to assert claims against third parties involved in the construction of their homes. Michael Dale Coleman, a named plaintiff in Todd, testified that he "is in the process" of suing his builder, and that he may include the original applicator of the EIFS as well as the repair applicator.[23] Still another plaintiff in Todd, Thomas R. Burton, testified that he has settled a claim against the builder of his home for water intrusion damage.[24]

The plaintiffs' choices in all of these cases to assert claims against these third parties demonstrates their vital role in any litigation against EIFS manufacturers. The fact that so many individual cases have been filed against EIFS manufacturers in just the past few months is also persuasive evidence that individual lawsuits are economically feasible and provide a more reasonable and efficient basis for judicial resolution. Certification of a class is not necessary. See, e.g., Martin v. American Medical Systems, Inc., 1995 WL 680630, *9 (S.D. Ind. Oct. 25, 1995) (Exhibit U) (noting that filing of numerous individual lawsuits undermines the argument that such suits are not economically viable).

### 2. Damage Claims Raise Individual Issues Which Predominate

Another factor that would vary substantially in this case is the nature and amount of damage incurred by each purported class member. Among the named plaintiffs in these consolidated cases, the damages claimed for repair range from $18,000[25] to $83,000[26] Some plaintiffs claim alleged insect

---

[23] Deposition of Michael D. Coleman ("Coleman Dep.") (Exhibit F) pp. 35, 50.

[24] Deposition of Leora Burton ("Burton Dep.") (Exhibit G) pp. 29, 31, 37, 41.

[25] Burton Dep. (Exhibit G) pp. 31-32.

[26] Deposition of Leni Lukban ("Lukban Dep.") (Exhibit H) p. 16.

11

damage,[27] while others do not[28] Determination of the costs of repair for each class member's home would depend not only upon variables such as the condition of each particular house, but also upon local and regional variables such as building costs and building code requirements.[29] Only through an individual analysis of each home, and a trial on the merits as to each home, can the amount of repair damages be determined. Such an undertaking is impractical in a class action, and would be better handled in individual litigation.[30]

Moreover, some plaintiffs claim that complete removal and replacement of the EIFS with some other type of siding is necessary.[31] Conversely, many of the named plaintiffs have conceded that they do not plan to remove the EIFS,[32] and in most cases defendants can prove that complete removal is unnecessary and wasteful.[33] These determinations will have to be made on a case by case basis.

Even more complicated is plaintiffs' claim for alleged "stigma" damages -- diminution in the

---

[27] Lukban Dep. (Exhibit H) pp. 14-15; Burton Dep. (Exhibit G) p. 47.

[28] Deposition of William Lamoureux ("Lamoureux Dep.") (Exhibit I) p. 28; Coleman Dep. (Exhibit F) p. 57.

[29] See Lies Aff. ¶ 21. Some of the named plaintiffs have no actual damage to their homes. For example, an inspection report on the home of plaintiffs William and Betty Lamoureux showed that all moisture readings were well within acceptable limits. Liles Dep. (Exhibit B) pp. 49-50. See also inspection reports of the Lamoureux, Entwistle, Kirk, Schall and Campbell houses, attached to Plaintiff's Exhibit 33.

[30] See Alabama v. Blue Bird Body Co., 573 F.2d 309, 328 (5th Cir. 1978) (where individualized proof of injury was necessary, each plaintiff's claim would receive more thorough consideration in individually litigated actions); Windham, supra, 565 F.2d at 66 (where damage claims vary and are "highly individualized," individual issues predominate and a class action is unmanageable).

[31] Lukban Dep. (Exhibit H) pp. 15-16, 38; Deposition of Thomas Todd ("Todd Dep.") (Exhibit J) pp. 48-49; Deposition of Raymond Lanning ("Lanning Dep.") (Exhibit K) pp. 22, 28; Burton Dep (Exhibit G) pp. 42-43.

[32] Deposition of William A. Schaal ("Schaal Dep.") (Exhibit L) pp. 13, 15; Deposition of Anthony DeLoia ("DeLoia Dep.") (Exhibit M) pp. 23, 30; Lamoureux Dep. (Exhibit I) p. 28.

[33] See Lies Aff. ¶¶ 27(d).

12

market value of their homes absent physical damage.[34]   This claim for "damages" caused, not by any physical impairment, but by negative publicity, raises issues of proximate cause as to which the law of the various states will almost certainly differ.  Further, plaintiffs' expert, Wilbur Mundy, acknowledged that individual factors that could vary with every house will impact any market decline, including  (i) climate, (ii) the amount of EIFS on the home, (iii) the existence of any structural damage, (iv) construction quality, (v) costs of repair, and (vi) the amount and nature of negative publicity in the area.[35]   Mr. Mundy conceded that, because of such variables, the amount of any market decline could vary from one house to another, even within the same neighborhood.[36]

### 3.   Reliance Requirements Raise Individual Issues Which Predominate

In their claims of fraud, negligent misrepresentation and unfair trade practices plaintiffs allege that defendants misrepresented the quality and suitability of EIFS as an exterior wall cladding. Amended Consolidated Complaint at ¶¶ 67-85.  Each of these claims requires proof of individual actual and justifiable reliance upon a misrepresentation of a defendant. This would require an individualized inquiry into what was communicated by what manufacturer, by what person or documents, when, in what circumstances, and to what effect.  Courts routinely hold that class actions cannot be certified when the reliance of individual class members will be at issue.  The reason is that the reliance is inherently individual, and treatment of such cases as class actions is impractical.  See, e.g., Castano v. American

---

[34] Plaintiffs' expert, Wilbur Mundy, claims that he can do an effective study throughout every real estate market in the entire United States to demonstrate the amount of the alleged decrease in the value of EIFS clad homes. Mr. Mundy conceded, however, that the only study he has actually completed was based on the Wilmington market and one house in Seattle.  Deposition of Wilbur Mundy ("Mundy Dep.") (Exhibit N) pp. 15, 20, 67-69.  Mundy has never even attempted a nationwide study of the type he proposes to do -- his prior studies have been geographically limited.  Mundy Dep. pp. 11, 87. Furthermore, Mundy conceded that any market decline could be the result of poor construction techniques (rather than alleged defects in EIFS). Mundy Dep. pp. 14-16, 31-36.

[35] Mundy Dep. (Exhibit N) at pp. 23-25, 29-30, 36, 38-39, 135-39.  See also Deposition of Lisa Kegley ("Kegley Dep.") (Exhibit O) at pp. 46-48.

[36] Mundy Dep. (Exhibit N) at pp. 35-36, 53-54.

13

Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996); Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 482 F.2d 880, 882-83 (5th Cir. 1973), reh'g. denied, 485 F.2d 687 (5th Cir. 1973).[37]

To avoid the need for individual class members to prove actual reliance, plaintiffs state in their brief that "the class representatives will not pursue, on a class wide basis, any claim for common-law fraud." Plaintiffs' Memorandum at p. 17 n. 11. Plaintiffs do not explain this sudden abandonment of their fraud claim -- apparently they either (i) have concluded that the claim has no merit, or (ii) believe that the odds of getting a class certified are greater without the fraud claim. Whatever the reason for this concession, actual and justifiable reliance on a representation by defendants remains a critical element of plaintiffs' claims. This is true for at least three reasons. First, plaintiffs assert a claim for violation of consumer protection statues which is based on allegations of deceit. Amended Consolidated Complaint at ¶¶ 83-84.[38] Second, plaintiffs assert negligent misrepresentation claims. Amended Consolidated Complaint at ¶¶ 74-80; Motion for Class Certification at p. 1. Actual and justifiable reliance are elements of negligent misrepresentation in almost every state. E.g., Stewart Title v. Nampa Land Title Co., 715 P.2d 1000, 1003 (Idaho 1986). Third, plaintiffs assert express warranty claims. Amended Consolidated Complaint at ¶¶ 86-88; Motion for Class Certification at p. 2. Actual reliance is an element of a breach of warranty claim in many states. See Castano, supra, 84 F.3d at 745 n.20.

### 4. Given Substantial Differences in the Applicable Law of the Fifty States, Common Questions Do not Predominate and a Class Action is Not a Superior Method of Adjudication

In a nationwide class action based on diversity jurisdiction, the district court must apply the

---

[37] Other cases with a substantially identical holding include the following: Darms v. McCulloch Oil Corp. 720 F.2d 490, 493 (8th Cir. 1983) (where there were different degrees of reliance among the 2000 class members, proof of individual reliance precluded class certification); In re Hotel Tel. Charges, 500 F.2d 86, 89 (9th Cir. 1974); Martin v. Dahlberg, Inc., 156 F.R.D. 207, 215 (N.D. Cal. 1994); Caruso, supra, 101 F.R.D. at 536; and McElhaney v. Eli Lilly & Co., 93 F.R.D. 875 (D.S.D. 1982).

[38] Reliance is a necessary element of an action under consumer protection statutes in many states. See Castano, supra, 84 F.3d at 745 n.20. See also the cases cited in footnote 47.

14

substantive law of every state in which class members reside.[39] In most nationwide class actions

governed by state law, variations in state law are so substantial as to overshadow any common issues.

Castano, supra, 84 F.3d at 740-43 (nationwide class action against tobacco companies improperly

certified where it would require application of the law of all fifty states); American Medical, supra, 75

F.3d at 1085 (nationwide product liability action improperly certified because of differences in

negligence law among the states); Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 (11th Cir.

1987), reh'g. denied en banc, 832 F.2d 1267 (11th Cir. 1987) ("differing standards of liability required

by the laws of the various states would render class action treatment unmanageable"), cert. denied, 485

U.S. 959 (1988); Margolis v. Caterpillar, Inc., 815 F. Supp. 1150, 1153 (D. Ill. 1991) ("[t]he choice of

law analysis which would be required for the adjudication of the common law fraud claims of a national

class of stock purchasers would subsume any common issues raised by those claims").

Moreover, variations in state law render a nationwide class action impractical and an inferior

method of adjudicating claims. See Rhone-Poulenc, supra, 51 F.3d at 1299-1302 (nationwide class of

hemophiliacs asserting negligence claims against providers of blood solids could not be certified due to

substantial differences in state negligence law); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 265

(S.D. Cal. 1988) (certification improper due to various differences in applicable state laws); McFarland

v. Memorex Corp., 96 F.R.D. 357, 364 (N.D. Cal. 1982) (no nationwide class could be certified where

claims were governed by the law of each state where stock was purchased); Elster v. Alexander, 76

F.R.D. 440, 442 (N.D. Ga. 1977), app. dismissed, 608 F.2d 196 (5th Cir. 1979) (problems of

---

[39] See Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 265 (S.D. Cal. 1988) (denying class
certification, the court observed that "the laws of different states would apply to different claims,
depending on where those claims arose . . . The law of each state would still need to be separately
analyzed and applied to each class member."); McFarland, supra, 96 F.R.D. at 364 (in order to decide
fraud claims by purported class members "the law of each state where a purchase was made must be
examined"); Rental Car of New Hampshire, Inc. v. Westinghouse Elec. Corp., 496 F. Supp. 373, 381 (D.
Mass. 1980) (denying class certification of breach of fiduciary claims, the court noted that "the law of
every state in which a fiduciary duty arose and was tortiously breached would be involved in resolving
the claims of individual members of the class . . . .").

manageability and predominance of individual questions precluded certification of a nationwide class of purchasers of stock).

a. <u>Variations in State Negligence Law are Unmanageable</u>

There are significant and unmanageable differences in the negligence law applied by the various states. <u>See</u>, <u>e.g.</u>, <u>Keams v. Tempe Technical Institute</u>, 39 F.3d 222, 226 (9th Cir. 1994) (negligence tort law varies from state to state, and the law of the various states could impose numerous standards for performance in a given situation); <u>Harding v. Tambrands, Inc.</u>, 165 F.R.D. 623, 629-30 (D. Kan. 1996) ("There is no one standard of negligence, for example, which would be applicable to all members of the plaintiff class. The law of negligence is not uniform and cannot be abstracted into a single instruction."). These differences in the law of the various states include the following: (i) differing judicial formulations of the meaning of negligence and the subordinate concepts;[40] (ii) differences in pattern jury instructions on negligence claims; (iii) differences in the degree to which foreseeability must be proven; (iv) differences in the relevance of industry custom or practice as a defense; (v) differences in the appropriate standard for judging the conduct of professionals; and (vi) differences in the proper measure of damages. <u>See</u> <u>In re Rhone-Poulenc</u>, <u>supra</u>, 51 F.3d at 1299-1302. What defenses are recognized and how those defenses are applied create further differences.[41] All of these numerous differences in the application of negligence standards can "make a big difference in the [potential] liability of the defendants." <u>Id</u>. at 1302.

One example specific to this case should suffice. Various jurisdictions treat the violation of a

---

[40] For example, in some states, the correct standard is whether the manufacturer exercised reasonable care in manufacturing a product. <u>See</u>, <u>e.g.</u>, <u>Fane v. Zimmer, Inc.</u>, 927 F.2d 124, 130 (2d Cir. 1991) (applying New York law). In other states, however, the correct standard is whether a prudent manufacturer by the exercise of ordinary care should have discovered and foreseen the condition and potential problems with the product when the product was put on the market. <u>See</u>, <u>e.g.</u>, <u>Ulrich v. Kasco Abrasives Co.</u>, 532 S.W.2d 197, 200 (Ky. 1976).

[41] This includes differences over whether contributory negligence or assumption of risk are a defense, and in the application of comparative fault principles. <u>See</u> <u>Castano</u>, <u>supra</u>, 84 F.3d at 743 n.15.

16

code, ordinance or statute as: 1) evidence of negligence; 2) negligence per se; 3) the basis for finding a higher duty or degree of care; 4) the basis for strict liability; or 5) the basis for absolute liability. [42] Whether a building code violation is negligence per se will depend upon a jurisdiction-specific and/or fact-specific analysis of a variety of factors, including whether the building code is an administrative or legislative construct, whether the code was designed to protect people like the claimant from the type of conduct alleged, the respective roles of those to be held liable, and whether the code violation was the proximate cause of the alleged injury. [43] No jury instruction, and no specific jury issues, could accommodate all of these various standards.

The differences in the applicable negligence standards are sufficient to prevent a court from certifying a nationwide class action for claims based on the negligence law of the fifty states. Because of the many differences in state negligence law, common issues cannot predominate. See Harding, supra, 165 F.R.D. at 629-30 (citing variations in the negligence law of the various states in denying motion for class certification); Rhone-Poulenc, supra, 51 F.3d at 1299-1302 (same).

b. Variations in State Consumer Protection Statutes are Unmanageable

Adjudication of plaintiffs' claim under the consumer protection statutes of the various states likewise would be unmanageable. In Section IV.B.4.a(2) of Plaintiffs' Memorandum, plaintiffs propose

---

[42] Michael S. Simon, Construction Law Claims and Liability §2.2-6 (Arlyse Enterprises, Inc. 1989); Oates v. Jag, supra, 314 N.C. 276 (negligence per se); Virginia Electric & Power Co. v. Savoy Construction Co., 294 S.E.2d 811 (Va. 1982) (same); Burran v. Dambold, 422 F.2d 133 (10th Cir. 1970) (same); cf. Herbst v. Miller, 830 P.2d 1268 (Mont. 1992)(differentiating between state code and town ordinance).

[43] See, e.g., Zimmerman v. St. Peter's Catholic Church, 622 N.E.2d 1184 (Ct. App. Ohio 1993) (violation of a specific, detailed requirement can be negligence per se but the violation of a general or abstract requirement is not negligence per se"); Herbst, supra, 830 P.2d 1268; Schlobohm v. United Parcel Service, Inc., 248 Kan. 122, 804 P.2d 978 (Kan. 1991) (requiring intent of legislature to create a private right of action); Nettleton v. Thompson, 787 P.2d 294 (Ct. App. Idaho 1990) (requiring clear law, intended to protect persons like the plaintiff from the type of harm alleged, in the absence of excuse or justification); Stephens v. Stearns, 678 P.2d 41 (Idaho 1984) (holding contractor negligent per se, remanding for determination as to negligence of architect and landlord).

17

a subclass excluding those states requiring reliance,[44] arguing that such a simple expedient would allow an easy determination of unfair trade practices claims in the remaining 46 states and the District of Columbia. Plaintiffs' argument both understates the complexity of such an undertaking and misstates the applicable law. Indeed, plaintiffs' argument is contrary to their own authority. See Sandra B. Brantley & Beverly C. Moore, Jr., Commonality of Applicable State Law in Nationwide or Multistate Class Actions - Deceptive Trade Practices, 18 Class Action Reports 188 (March - April 1995), annexed to Plaintiffs' Memorandum as Exhibit 37.[45] This article makes it clear that unfair trade practices acts vary significantly from state to state, and any analysis of those laws will be complex. Id.

According to the Brantley article, the states must be divided into three groups. The first group includes states that broadly prohibit any "unfair or deceptive act or practice." This first group must be further subdivided into those states that provide no further detail and those that provide an "included but not limited to" list of specific prohibited practices. The second major group includes those states with a "laundry list" of specific prohibited practices. Brantley, at p. 194. These "laundry lists" vary from state to state. The third group consists of states that have adopted either of the preceding types of unfair trade practices statute, but include a scienter requirement. Brantley, at p. 195.[46] Adding further complexity, two subgroups must be "carved out" of each of these three groups: those states that require proof of individual reliance, and those requiring "aggravating factors." Id., at p. 195. Several other states take what Brantley describes as an "intermediate" approach, not equating a breach of warranty or contract with an unfair trade practice without some further showing, but falling short of requiring

---

[44] The logic of this section of Plaintiffs' Memorandum is unclear. Plaintiffs discuss reliance, yet refer to a chart detailing scienter requirements among the states. Plaintiffs' Memorandum at p. 26, App. 7. Defendants have attempted to respond to plaintiffs argument as if it were clearly stated.

[45] Incorrectly referred to in Plaintiffs' Memorandum as Exhibit 36. Plaintiffs' Memorandum at p. 27.

[46] Plaintiffs' list of states requiring scienter incorrectly includes Alabama and incorrectly excludes Arkansas, according to Brantley. Plaintiffs' Memorandum at p. 27; see Brantley, supra, at p. 198.

18

"aggravating factors." Id., at p. 199. Plaintiffs propose to reduce the complexity of the analysis by excluding states requiring reliance,[47] but have disregarded the "aggravating factors" and "intermediate" distinctions. Plaintiffs' Memorandum at p. 27. Plaintiffs also omit any reference to the fact that unfair trade practices laws vary among states respect to measure of damages, scope of coverage and liability, statutes of limitations, prohibitions against class actions and pre-filing notice requirements. Brantley, supra, at p. 200. In summary, plaintiffs fail to address fully the complexity inherent in attempting to reconcile state unfair and deceptive trade practices laws.

In Wall v. Merrill Lynch, Pierce, Fenner & Smith, 1992 WL 245540 at *4 (N.D. Ill. Sept. 21, 1992) (Exhibit V) the court denied class certification in a case raising deceptive trade practice claims because "it would be unmanageable to consider potentially 50 different state statutes (or perhaps more if some states have more than one applicable statute)." This case presents the same difficult choice of law issues.

### c. Variations in the Statutes of Repose are Unmanageable

The statutes of repose that are applicable to products liability actions vary widely among the states.[48] The time period after which an action is barred ranges from six to twelve years. See REPOSE

---

[47] Plaintiffs claim that only Arizona, Georgia, Indiana and Wyoming require reliance. See Plaintiffs' Memorandum at p. 27; Brantley, supra, at pp.198-199. It appears that this list is overly simplistic, taking statutory language into account but largely ignoring case precedent. See, e.g., Gilbane Building Co. v. Federal Reserve Bank of Richmond, 80 F.3d 895, 903 (4th Cir. 1996) (approving North Carolina law) (noting that although dicta suggests reliance is not a necessary element of unfair trade practices claim, no cases have permitted recovery without reliance); Smart v. New Hampshire Ins. Co., 384 N.W.2d 772, 776 (Ct. App. Mich. 1985), aff'd., 407 N.W.2d 362 (Mich. 1987) (reliance was an essential element of misrepresentation that formed basis for plaintiffs' unfair trade practices claim); Atlantic Cement Co. v. South Shore Bank, 730 F.2d 831, 834 (1st Cir. 1984) (reliance is a necessary element of claim under Massachusetts unfair trade practices statute); Di Teodoro v. J.G. Durand Int'l., 566 F. Supp. 273, 275 (E.D. Pa. 1983) (Pennsylvania unfair trade practices statute requires that purchase be made in reliance on deceptive practice alleged).

[48] Since plaintiffs seek to represent owners of buildings that had an EIFS exterior installed as long ago as 1986, the statutes of repose would be a significant issue in this case. Plaintiffs have previously argued that fraud exceptions in certain state statutes of repose (such as N.C. Gen. Stat. § 1-50(a)(5)), will prevent the statutes of repose from barring their claims. Plaintiffs no longer have this argument, however, because they have expressly abandoned their fraud claims. Plaintiffs' Memorandum at p. 17.

FOR MANUFACTURERS, 64 N.C. LAW REV. 1156, 1156, 1160 nn. 5 & 22 (Exhibit S).[49] In addition, the date on which the statute begins to run varies significantly as follows: date the product is first sold (eleven states), date of delivery to the initial user ( five states), date when the defendant parts with control of the product (2 states), date when the product is first put to use (one state), date of the act giving rise to the plaintiff's cause of action (one state). Id. at 1160 n. 23. In still other states the statute of repose depends upon the useful life of the product in question. Id. at 1177.[50] There is no practical method for the court to apply the different statutes of repose to the individual claims of the purported class members without a specific factual inquiry in each case.

### d.    Variations in State Punitive Damage Law are Unmanageable

Plaintiffs recognize that the law of punitive damages varies significantly among the states. They therefore propose to create a subclass that excludes residents of the five states that would not recognize a claim for punitive damages, and to use jury interrogatories to deal with differing standards for awarding punitive damages, such as reckless indifference, actual malice, and gross negligence. Plaintiffs' Memorandum at p. 28. Plaintiffs' proposal significantly underestimates the relevant differences in the law of punitive damages. For example, punitive damages are theoretically without limit in certain states, while other states limit punitive damages recovery -- either by limiting the amount of the award or allowing only the first successful plaintiff to recover. E.g., Fla. Stat. § 768.73 (punitive damage recovery limited to three times the amount of compensatory recovery with 60% going to the state, but

---

[49] This article contains an analysis of differences in the various product liability statutes of repose throughout the United States, including citations to the relevant statutes. To avoid unnecessarily lengthy argument, citation has been made to the relevant portions of the article.

[50] The issue of constitutionality of the statutes of repose would further complicate application of these various statutes in a single action. In some states, the product liability statute of repose has been upheld as constitutional. See e.g., Tetterton v. Long Mfg. Co., 314 N.C. 44, 332 S.E.2d 67 (1985). In other states, however, there has been no decision on the constitutionality of the statute. See REPOSE FOR MANUFACTURERS, 64 N.C. LAW REV. 1156, 1156-57 n. 11. It would be nearly impossible for a court to predict whether (in states that have not ruled on the issue) a product liability statute of repose would be held constitutional.

does not apply to class actions); Ga. Code § 51-12-5.1(e) (no limitation on recovery in products liability, but only one punitive award may be recovered and 75% goes to the state). Nothing in the plaintiffs' proposed subclass in any way accounts for these differences in state law.

There are other important differences in state law. Some states allow only exemplary damages that are compensatory in nature. See, e.g., Le Blanc v. Spector, 378 F. Supp. 301, 305 (D. Conn. 1973); Vratsenes v. N.H. Auto, 289 A.2d 66, 67-68 (N.H. 1972). The burden of proof also varies significantly: some variation of the preponderance of the evidence standard applies in some states, while many states require proof by "clear and convincing" evidence. See, e.g., Masaki v. General Motors Corp., 780 P.2d 566, 575 (Hawaii 1989); Ragsdale v. K-Mart Corp., 468 N.E.2d 524, 527 (Ind. Ct. App. 1984). No number of jury interrogatories could account for such differing burdens of proof.

### 5. Use of the Subclasses Proposed by Plaintiffs Would Not Render a Nationwide Class Action Manageable

To address variances in state law, plaintiffs propose five subclasses as follows:

| Proposed Subclass # 1: | Negligence subclass excluding residents of Louisiana, New Jersey, Ohio, Washington, Alabama, New York and Virginia. |
|---|---|
| Proposed Subclass # 2: | Unfair and Deceptive Trade Practices subclass excluding residents of Arizona, Georgia, Indiana and Wyoming. |
| Proposed Subclass # 3: | Implied Warranty subclass, excluding residents of Alabama, Arizona, Florida, Idaho, Indiana, Iowa, Kentucky, New York, Washington and Wisconsin. |
| Proposed Subclass # 4: | Express Warranty subclass, excluding residents of Louisiana. |
| Proposed Subclass # 5: | Punitive Damages subclass, excluding residents of Louisiana, Massachusetts, Nebraska, New Hampshire and Washington. |

Subclasses such as those proposed by plaintiffs do not solve the management difficulties inherent in a nationwide class action. In fact, use of these five proposed subclasses would actually complicate, rather than simply, any effort to manage this case as a nationwide class action.

Plaintiffs' proposed subclasses reflect the overly simplistic approach of omitting certain members

21

of the purported class if their home state does not recognize the particular cause of action.[51] This approach does not solve the fundamental problem, discussed in Section III.A.4. of this Memorandum, that the substantive law of the states that recognize the causes of action asserted by plaintiffs varies significantly.

The system that plaintiffs propose is unworkable because it would place class members in a morass of confusing and competing subclasses. For example, a resident of Louisiana would be a member of subclasses 2 and 3, and would be excluded from subclasses 1, 4 and 5. Conversely, a resident of Indiana or Arizona would be a member of subclasses 1, 4 and 5, but would be excluded from subclasses 2 and 3. A resident of Alabama would be a member of subclasses 2, 4 and 5, but would be excluded from subclasses 1 and 3, while a resident of Washington would be a member of subclasses 2 and 4, but would be excluded from subclasses 1, 3, and 5. A multitude of similar confusing scenarios would be created by the subclass system proposed by plaintiffs. In a class that encompasses hundreds of thousands of persons throughout the United States, the system proposed by plaintiffs would be unworkable.

The vast majority of courts have not found any system of subclasses sufficient to allow for the management of nationwide tort litigation. To the contrary, given the differences in applicable law and the preponderance of individual issues, courts generally have refrained from certifying nationwide class actions involving product liability claims. See, e.g., Kurczi v. Eli Lilly & Co., 160 F.R.D. 667, 673-74 (N.D. Ohio 1995) (citing differences in state product liability law in denying class certification); Doe v. Guardian Life Ins. Co., 145 F.R.D. 466, 476 (N.D. Ill. 1992) ("[E]ven if the court resolved the plaintiffs' common questions, a series of mini-trials would have to follow addressing numerous factual and legal issues . . . ."); Davenport v. Gerber Products Co., 125 F.R.D. 116, 120 (E.D. Pa. 1989) ("[C]ertification on the narrow legal issues presented by plaintiffs does not advance this litigation in light of the fact that

---

[51] In their so-called "surveys" of state law, plaintiffs have done little more than compile a list of states that recognize certain causes of action, and states that either do not recognize the cause of action, or impose unique requirements to state a claim. See Exhibits 4-10 to Plaintiffs' Memorandum.

virtually all of the issues related to liability would remain unresolved on an individual basis."); Ikonen, supra, 122 F.R.D. at 265 (common issues did not predominate in purported nationwide class action due to differences in state products liability law).[52]

Plaintiffs place substantial reliance upon the Fourth Circuit's decision in Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177 (4th Cir. 1993). That case, however, does not support plaintiffs' request for certification in this case. This is so for at least four reasons:

- First and foremost, there were no third parties in Central Wesleyan who were alleged to be responsible for the plaintiffs' damages. Thus, the plethora of case management difficulties explained in Section III.A.1. of this Memorandum (involving third party contractors, architects, applicators, etc.) were not even considered in the Central Wesleyan case.

- Second, the district court in Central Wesleyan conditionally certified a class of only some 3,000 potential class members. The class which plaintiffs seek to certify in the present case contains hundreds of thousands of members. Thus, management difficulties are increased exponentially in the present case.

- Third, the district court in Central Wesleyan certified a Phase One class to determine limited legal issues. 6 F.3d at 184.[53] Further class proceedings were contingent on a finding that the

---

[52] See also Castano, supra, 84 F.3d 734; American Medical, supra, 75 F.3d 1069; Georgine v. AmChem Products, Inc., 1996 WL 242442 (3d Cir. 1996) (Exhibit W); Rhone-Poulenc, supra, 51 F.3d 1293; Caruso, supra, 101 F.R.D. 530; Sanders v. Tailored Chemical Corp., 570 F. Supp. 1543 (E.D. Pa. 1983); Delaney v. Borden, Inc., 99 F.R.D. 44, 44 (E.D. Pa. 1983). Other cases refusing to certify mass tort litigation include the following: In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726 (2d Cir. 1993); In re Bendectin Products Liability Litig., 749 F.2d 300 (6th Cir. 1984); In re Dalkon Shield, supra, 693 F.2d 856; Harding, supra, 165 F.R.D. 623; Hurd v. Monsanto Co., 164 F.R.D. 234 (S.D. Ind. 1995); Kurczi, supra, 160 F.R.D. 667; Ikonen, supra, 122 F.R.D. 258; In re Tetracycline Cases, 107 F.R.D. 719 (W.D. Mo. 1985); Mertens v. Abbott Laboratories, 99 F.R.D. 38 (D.N.H. 1983); and Yandle v. PPG Industries, Inc., 65 F.R.D. 566 (E.D. Tex. 1974).

[53] The Fourth Circuit expressed concern as to whether, if the Phase One process could be completed, the court could adequately handle the "daunting number of individual issues still loom[ing] beyond the Phase One proceeding." 6 F.3d at 188-89.

23

named plaintiff had standing to pursue its claims. 6 F.3d at 187-88.

- Fourth, <u>Central Wesleyan</u> is unique because it involved asbestos, an area with a long history of litigation experience and a need for creative case management. In contrast, the present case involves no litigation explosion as is the case with asbestos, and there is only limited litigation experience with claims of defects in EIFS. <u>Cf.</u> <u>Castano</u>, <u>supra</u>, 84 F.3d at 747-51 (certification of nationwide class claiming damages from addiction to tobacco was improper where there is no judicial crisis of litigation, and where there was no litigation history with claims of addiction); <u>American Medical</u>, <u>supra</u>, 75 F.3d at 1085 (class action is not a superior method of adjudication where judicial management crisis does not exist and individual trials are possible); <u>Rhone-Poulenc</u>, <u>supra</u>, 51 F.2d at 1304 ("The number of asbestos cases was so great as to exert a well-nigh irresistible pressure to bend the rules in occasionally certifying a class action.").[54]

B.     <u>Plaintiffs Have Not Satisfied the Requirements of Rule 23(a)</u>

In addition to satisfying the requirements of Rule 23(b), plaintiffs must also meet the four requirements of Rule 23(a). The four requirements are that:

(1)     the class is so numerous that joinder of all members is impracticable,

(2)     there are questions of law or fact common to the class,[55]

_____

[54]Plaintiffs also rely upon <u>Naef v. Masonite Corp.</u>, an Alabama Circuit Court opinion attached to their memorandum as Exhibit 2. That case, however, does not support plaintiffs' position. First, the claim in <u>Naef</u> was that water leaked directly through Masonite siding. In other words, the product itself was the cause of the leaks. <u>Naef</u> at p. 2. In that context, the conduct of third parties who installed Masonite siding was not at issue. In the present case, the undisputed evidence shows that the product itself is not the source of the leaks; instead, it is the result of violations of the building code by third parties. <u>See</u> the discussion in Section III.A.1. of this Memorandum.

[55] This second requirement is a less stringent subset of the requirement of Rule 23(b)(3), discussed in Section III.B. of this Memorandum, that questions common to the class must predominate. Even assuming <u>arguendo</u>, that some common questions are presented in this litigation, the discussion in Section III.A. of this Memorandum clearly demonstrates that individual issues predominate. Respondents therefore do not separately address the commonality provision of Rule 23(a). <u>See</u> <u>Georgine</u>, <u>supra</u>, at *16 ("Because 23(b)(3)'s predominance requirement incorporates the commonality requirement [of Rule 23(a)(2)], we will treat them together"); <u>Harding</u>, <u>supra</u>, 165 F.R.D. at 627 ("[t]he commonality

(3)     the claims or defenses of the representative parties are typical of the claims or defenses

        of the class, and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). A failure to satisfy even one of the four factors is fatal to certification. Haywood v. Barnes, 109 F.R.D. 568, 575 (E.D.N.C. 1986). Plaintiffs have failed to meet their burden under Rules 23(a)(1)-(4), and certification should be denied on that basis.

### 1.     Numerosity Has Not Been Established Because Plaintiffs Lack Standing

As a theoretical matter, it is not denied that the class proposed by plaintiffs could satisfy the numerosity requirement of Rule 23(a)(1).[56] In this case, however, the named plaintiffs do not have standing to assert claims individually (let alone representatively) against all thirteen defendants remaining in this consolidated litigation. In order to have standing a plaintiff must demonstrate some actual or threatened injury as a result of the conduct of each of the named defendants. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 102 S. Ct. 752, 70 L.Ed.2d 700 (1982). Absent such proof, plaintiffs have no standing for their individual claims, nor do they have standing to assert claims as class representatives. See Central Wesleyan, supra, 6 F.3d at 187-88; Herlihy v. Ply-Gem Industries, Inc., 752 F. Supp. 1282 (D. Md. 1990).

Plaintiffs in this case lack standing to pursue claims against all defendants in this case because they do not have EIFS product manufactured by all defendants on their homes.[57] Plaintiffs concede their

---

question under Rule 23(a)(2) is subsumed within the predominance determination under Rule 23(b)(3)").

[56] However, at this point, it is unknown how many class members there are. Most members of the proposed class will not be able to meet the jurisdictional amount. See Zahn v. International Paper Co., 414 U.S. 291, 301, 94 S. Ct. 505, 512, 38 L.Ed.2d 511 (1973) (each plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount and any plaintiff who does not must be dismissed).

[57] None of the moving plaintiffs can state any claim against defendants Thoro System Products, Inc. or Pleko Products, Inc., because no plaintiff has EIFS product manufactured by these defendants on their home. Consolidated Amended Complaint at ¶¶ 6-20.

lack of standing to pursue claims against all defendants, but argue that their conspiracy allegations are sufficient to allow them to proceed. Plaintiff's Memorandum at p. 18. However, plaintiffs have not presented the Court with any evidence to support their allegations that all defendants conspired to mislead the public regarding the quality of EIFS.[58] See Boon Partners v. Advanced Financial Concepts, 917 F. Supp. 392, 397 (E.D.N.C. 1996) (acts of other alleged co-conspirators cannot be imputed to other defendants without sufficient facts to support the claim of a conspiracy). More importantly, in their brief, plaintiffs state (without explanation) that they are abandoning all fraud claims. Plaintiffs' Memorandum at p. 17. Since the conspiracy claim is based exclusively on fraud,[59] plaintiffs have implicitly abandoned the conspiracy claim.

> 2. Plaintiffs' Claims Are Not Typical To Each Other Or To Putative Class Members

In order to obtain certification, plaintiffs must affirmatively establish that the claims and defenses of the representative plaintiffs are typical of the claims and defenses of the proposed class. Fed. R. Civ. P. 23(a)(3). Courts have recognized that typicality is often lacking in product liability cases, because each class member's claims may ultimately turn on highly individual facts. See Ikonen, supra, 122 F.R.D. at 263; McKernan v. United Technologies Corp., 120 F.R.D. 452, 454 (D. Conn. 1988). Typicality is similarly lacking in the present case.

Within the scope of plaintiffs' proposed class are putative plaintiffs who used the product of one of eleven different defendants. In turn, since 1986, each defendant has offered several

---

[58] Plaintiffs submitted materials regarding the EIFS Industry Manufacturers' Association, known as EIMA. Plaintiffs' own evidence shows that EIMA is a nonprofit trade association involved in activities such as developing guideline specifications for EIFS systems. See Plaintiffs' Exhibits 1 and 2. The only statements by EIMA submitted by plaintiffs regarding EIFS and alleged water intrusion are statements made after litigation had already been filed (and after plaintiffs bought their homes). See Plaintiffs' Exhibits 2 and 30. Such statements cannot form the basis of a conspiracy claim in this case.

[59] The alleged conspiracy was supposedly one to mislead the public. Amended Consolidated Complaint at ¶¶ 83-84.

different types of EIFS. With virtually every class member, EIFS was applied by a different applicator and the structure designed and/or built by different architects or builders. Also, in each instance, the parties and factual details as to the cause of any water intrusion will vary greatly.[60] Given this myriad of factual differences, the claim of one class member would not be typical of the claims of other class members.[61]

A particular problem is the fact that all named plaintiffs reside in North Carolina (most plaintiffs reside in the Wilmington area). This area of the country is unique -- because of environmental factors, and because of poor building practices, both of which have contributed to water intrusion in some EIFS clad homes. Lies Aff. ¶¶ 20, 22(b). Other areas of the country do not have the same problems with water intrusion that some North Carolina residents have experienced. Affidavit of Francois Bouan (Exhibit P) at ¶¶ 5, 7; Kenney Aff. at ¶ 15. Thus, the claims of plaintiffs (North Carolina residents) are not typical of the claims of homeowners in other states.

    3.    <u>Representative Plaintiffs Do Not Adequately Represent Members of the Proposed Class</u>

    a.    <u>Plaintiffs Cannot or Will Not Pursue Potentially Crucial Claims</u>

Plaintiffs propose to assert class claims for negligence, unfair and deceptive trade practices, and breach of express and implied warranties. The named plaintiffs either cannot or are not willing to pursue certain claims that are potentially crucial to some members of the purported class.

Plaintiffs are inadequate class representatives because they cannot pursue strict liability claims on behalf of the purported class. [62] A class representative cannot pursue a cause of action on behalf of

_____

[60] <u>See</u> the discussion in Section III.A.1. of this Memorandum.

[61] In a class such as this one, in which class members used different versions of a product, each experienced a distinct difficulty, and relevant defenses vary, the underlying lack of commonality and attendant conflicts destroy typicality. <u>See</u>, <u>e.g.</u>, <u>American Medical</u>, <u>supra</u>, 75 F.3d at 1081-82.

[62] The Complaint includes a claim for strict liability against all defendants. Plaintiffs allege that EIFS are defective, are unreasonably dangerous, and are incapable of being made safe for their ordinary

27

a class if the representative individually cannot pursue that cause of action. General Telephone Co. v. Falcon, 457 U.S. 147, 156 (1982). Plaintiffs concede that "the class representatives cannot meet the adequacy requirement with respect to that [strict liability] claim." Plaintiffs' Memorandum at p. 17 n. 11. Plaintiffs should not be allowed to serve as representatives of a class if they have no standing to assert a claim that is potentially central to the interests of some members of the class. It is hornbook law that strict liability requires proof that is both different from and potentially less demanding than negligence. Furthermore, in some jurisdictions, comparative fault principles are not applicable to strict liability claims.[63] Clearly, therefore, plaintiffs' inability to pursue the strict liability claims makes them inadequate representatives of at least some members of the class. See Pearl v. Allied Corp., 102 F.R.D. 921, 923-24 (E.D. Pa. 1984) (by abandoning breach of express warranty and related claims, the plaintiffs rendered themselves inadequate class representatives).[64]

Count I of Consolidated Complaint alleges that EIFS manufacturers defrauded consumers by making misrepresentations regarding the quality and suitability of EIFS. Amended Consolidated

---

and intended uses. Consolidated Amended Complaint at ¶¶ 94-96. These same allegations of supposed defects in the design of EIFS are repeated by plaintiffs in support of class certification. See Plaintiffs' Memorandum at pp. 1, 3, 4, 5, 8.

[63] See 3 AMERICAN LAW OF PRODUCTS LIABILITY § 40:44, at 72 (3d ed. 1992). Comparative negligence is inapplicable to strict liability actions in Nevada, Ohio, Oklahoma, Pennsylvania, South Dakota and Wyoming. See Young's Machine Co. v. Long, 692 P.2d 24, 25 (Nev. 1984); Bailey v. V&O Press Co., 770 F.2d 601, 602 (6th Cir. 1985); Kirkland v. General Motors Corp., 521 P.2d 1353, 1367 (Okla. 1974); Dillinger v. Caterpillar, Inc., 959 F.2d 430, 437 (3d Cir. 1992), reh'g. denied, 1992 U.S. App. LEXIS 5807 (3d Cir. Apr. 1, 1992); Smith v. Smith, 278 N.W.2d 155, 161 (S.D. 1979); Phillips v. Duro-Last Roofing., 806 P.2d 834, 836 (Wyo. 1991) (allowing plaintiff to recover under strict liability theory although 20% negligent).

[64] Plaintiffs argue that defendants have the burden of disproving plaintiffs' adequacy as class representatives. See Plaintiffs' Memorandum at p. 11. This position goes against the great weight of authority on this subject, which holds that a class may be certified only if plaintiffs initially satisfy each of the four threshold requirements of Rule 23(a). See, e.g., Int'l. Woodworkers of America, AFL-CIO, CLC v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1267 (4th Cir. 1981); Rodger v. Electronic Data Systems Corp., 160 F.R.D. 532 (E.D.N.C. 1995). "The adequacy of representation by a plaintiff is ultimately a question of fact with respect to which that plaintiff must bear the burden of proof." Dameron v. Sinai Hospital of Baltimore, Inc., 595 F. Supp. 1404, 1408 (D. Md. 1984).

28

Complaint at ¶¶ 67-73. Allegations of misrepresentations and concealment by defendants, and alleged failure to disclose "defects" in EIFS, are found throughout the Complaint. Amended Consolidated Complaint at ¶¶ 37, 38, 39, 40, 42, 47, 48, 49, 50, 51, 54, 58, 65.[65] Most important, the conspiracy claim on which plaintiffs rely to establish standing is based on fraud. Yet, despite the centrality of the fraud claim, plaintiffs state in support of their motion for class certification that they do not intend to pursue a fraud claim on behalf of members of the purported class. Plaintiffs' Memorandum at p. 17 n. 11.

### b. There are Material and Irreconcilable Differences Among the Interests of Class Members

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, the representative plaintiffs must have interests common to and not in conflict with those of other class members. General Telephone Co., supra, 457 U.S. at 157, n.13. Where the proposed class is composed of some members who have actual present damages, and others who have only potential future damages, there is a serious conflict between putative class members which prevents class certification. In the Georgine case, for example, one group of putative class members had suffered physical injury from asbestos, while another group had simply been exposed to asbestos (and therefore had the potential for suffering physical injury in the future). The court decertified a settlement class finding that the requirements of Rule 23(a)(4) had not been met. In particular, the interests of class members who had suffered actual injury were at odds with the interests of class members who had suffered only exposure.[66] The representative parties could not, therefore, fairly and adequately protect the interests of the class. Georgine, supra, at 46-48.

---

[65] Plaintiffs repeat their misrepresentation allegations in support of their motion for class certification. Plaintiffs' Memorandum at 6-7.

[66] The currently injured parties had an interest in obtaining as large a payment as possible up front, while the other parties had an interest in preserving as large a fund as possible for future payments. Georgine, supra, at 21. This irreconcilable conflict was a major factor in the court's decision to decertify the settlement class.

The conflict that was identified in <u>Georgine</u> also exists in this case. The plaintiffs in this case claim to have suffered actual present damage to their homes, yet many putative class members have only the alleged prospect of future damage. Kenney Aff. ¶ 15. The interests of the two groups are in inherent and irreconcilable conflict, and class certification must be denied on that basis.[67]

III.    <u>CONCLUSION</u>

For the reasons outlined above, the responding defendants respectfully submit that plaintiffs' Motion for Class Certification should be denied in its entirety.

Respectfully submitted the 30th day of October, 1996.

                    Jerry S. Alvis - NCSB: 82
                    W. Andrew Copenhaver - NCSB: 944
                    WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
                    P. O. Box 831, Raleigh, NC 27602
                    (919) 755-2100

                    Attorneys for Defendants Dryvit Systems, Inc.,
                    Thoro System Products, Inc., Senergy, Inc., Parex, Inc. and
                    Sto Corp. and Defendants' Liaison Counsel

---

[67] Respondents also dispute that persons with no physical damage to a structure have standing to assert any claim in this case. <u>See, e.g.</u>, <u>Adams v. Star Enterprise</u>, 51 F.3d 417, 422-25 (4th Cir. 1995).

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 30th day of October, 1996, he caused to be served the foregoing *MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION* by hand delivery at the place and address stated below:

Charles F. Blanchard, Liaison Counsel
BLANCHARD, JENKINS & MILLER, P.A.
3600 Glenwood Avenue, Suite 103
Raleigh, NC 27612

Jerry S. Alvis - NCSB: 82
W. Andrew Copenhaver - NCSB: 944
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
P. O. Box 831, Raleigh, NC 27602
(919) 755-2100

Attorneys for Defendants Dryvit Systems, Inc.,
Thoro System Products, Inc., Senergy, Inc., Parex, Inc. and
Sto Corp. and Defendants' Liaison Counsel