IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

OC. 30 1996

: . EL, CLERK
.... .CT COURT
Civil No. 5-96-CV-287-BR(2)

IN RE STUCCO LITIGATION

THIS DOCUMENT RELATES TO:
ALL CASES

## DEFENDANT U.S. GYPSUM'S MEMORANDUM
## IN OPPOSITION TO CLASS CERTIFICATION

Defendant U.S. Gypsum (hereinafter "USG") opposes certification of this action as a class action and submits this Memorandum in support of its position.

### SUMMARY OF ARGUMENT

Defendant USG joins the other defendants' arguments that the prerequisites for a class action have not been met by the plaintiffs in this matter and that this case cannot be certified against any of the defendants under Federal Rule of Civil Procedure 23. Without belaboring or repeating those assertions, Defendant USG will additionally demonstrate to the Court in this Memorandum that class certification against Defendant USG is particularly inappropriate, as the plaintiffs have not met their burden of proof that the claims or defenses of the representative party are typical of the claims or defenses of the class, that the representative party will fairly and adequately protect the interests of the class, that common issues predominate over any questions affecting only individual members, and that a class action is superior to

1

PARTIALLY
SCANNED
Case 5:96-cv-00287-BR   Document 135   Filed 10/30/96   Page 1 of 21

other available methods for the fair and efficient adjudication of the controversy.

## I. The Action Does Not Meet All Of The Requirements Of Federal Rule Of Civil Procedure 23(a).

### A. The "Typicality" Requirement Simply Cannot Be Met By The Representative Parties.

Federal Rule of Civil Procedure 23(a) requires that the claims of the representative parties be typical of the claims of the class. In order to satisfy the typicality requirement, the interests of the class representative "ought to be squarely aligned in interest with the represented group." McGlothlin v. Connors, 142 F.R.D. 626, 633 (W.D. Va. 1992), quoting, Haywood v. Barnes, 109 F.R.D. 568 (E.D.N.C. 1986). Courts have often held typicality lacking in products liability cases because each class member's claims may ultimately depend upon highly individualized facts. See Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258 (S.D. Cal. 1994); McKernan v. United Technologies Corp., 120 F.R.D. 452 (D.Conn. 1988). Such is the case in this litigation.

#### 1. The "typicality" requirement cannot be met against any of the defendants.

Plaintiffs cannot meet the "typicality" requirement in this litigation because of the highly individualized nature of the facts at issue in each individual homeowner's dispute. For example:

- Some homeowners have apparently suffered little or no structural damage as a result of EIFS products while some have allegedly incurred severe damage. There is no "typical" case. Further, repair costs will vary significantly from home to home.

2

- The cause of water intrusion varies significantly from homeowner to homeowner, including failed, improperly applied, or missing sealants in joints at the perimeter of wall openings, such as windows; defective window frame corners; discontinuities and gaps in flashings, roof edges and wall junctures; cracks in the EIFS at re-entrant corners; and miscellaneous problems at framed balcony decks and chimney details; none of which are manufactured or installed by the defendants;

- Each of the named plaintiffs and each member of the putative class will have utilized different architects, builders, and installers, all of whom may be liable, in part or whole, to the plaintiffs;

- Each of the named plaintiffs and each member of the putative class will have entirely unique facts relating to whether there could have been mitigation;

- Some of the named plaintiffs and some of the putative class members have already pursued or will pursue claims against their architect, builder, and installer, and some plaintiffs have already been compensated or will be compensated for damages by another party;

- The effect that various building codes in Eastern North Carolina may have on the performance and application of EIFS is not typical of that in many other jurisdictions;

- The effect that weather and humidity conditions in Eastern North Carolina may have on the performance and application of EIFS is not typical of that in many other jurisdictions;

- If issues of property value are tried, the value of homes in the class representatives' neighborhoods cannot be considered typical of class members' neighborhoods.

Nor does this case involve a simple claim that a defective building material resulted in damages to a home. See e.g. the Masonite and Louisiana Pacific class actions, where plaintiffs claimed that exterior siding simply fell apart. Here, on the other hand, the claim is not that the EIFS failed in the sense that water

3

came through the middle of the wall. Instead, the claim is that water came through where the EIFS meets the windows and other penetrations and that the water had no way of escape from the wall cavity. Plaintiffs characterize this as a design defect of the EIFS, but it could just as easily be characterized as a question of which party had responsibility for the design of the "skin" of the building -- the architect, general contractor, window manufacturer, or EIFS manufacturer? Or to the extent that caulking or windows or flashing were not properly installed, is this the responsibility of the contractor or subcontractor or instead of the building materials manufacturers who produced the caulk, flashing, windows, and EIFS? To certify a class because all of these claims involve EIFS makes no more sense than to certify a class of all construction claims that involve failed concrete or failed roofing. To be sure, each of these involves common elements, but not in the sense required by Rule 23. The multi-factored moisture intrusion problems in Wilmington cannot plausibly be reduced to the single claim that EIFS are defective simply to justify class action treatment. In a class action such as this one, in which there are so many distinctly individual variables, typicality is clearly defeated by the underlying lack of commonality and attendant conflicts. See In re American Medical Systems, Inc., 75 F.3d 1069 (6th Cir. 1996).

4

## 2. The "typicality" requirement of Rule 23 cannot be met against Defendant USG particularly.

The only named class representatives allegedly owning a home which contained EIFS manufactured by Defendant USG are Thomas and Virginia Todd. At his deposition taken on August 6, 1996, Mr. Todd testified as follows:

- The only USG EIFS on the Todd home was allegedly placed there when a 240-260 square foot sunroom was added in June 1994. The remainder of the home was allegedly clad in Defendant Shield's EIFS. (Todd depo. at 17). All EIFS products were removed in March 1996. (Todd depo. at 18, 27).

- Mr. Todd could not state with certainty that it was USG EIFS applied to the sun room. (Todd depo. at 54). He could only state that he believed that the base coat and finish coats, which were applied to the house when the sunroom was built, were USG products. Indeed, the R.V. Buric Construction Consultants Inspection report dated November 15, 1995, indicates that the reinforcing mesh on the sun room addition ("West Elevation") was blue in color. (Exhibit to Todd Depo.). USG EIFS utilizes a green reinforcing mesh. (Defendant USG's Response to Plaintiffs' Questionnaire No. 11).

- When the house was stripped for recladding in March 1996, Mr. Todd saw no damage to the sun room portion of the house. (Todd depo. at 56).

- The total costs incurred by the Todds, including the sunroom, totalled "somewhere around $26,000 to $27,000." (Todd depo. at 23).

- In addition to serving as a class representative in this action, the Todds now have pending state court litigation against their contractor, their applicator, and Defendant USG for the same damages sought in this litigation. (See copy of Complaint, attached hereto as Exhibit A).

5

Given these factors, the Todds' claim cannot be considered typical of the claims of the putative class.[1]   Without the Todds, there is no class representative with a claim against Defendant USG.  (See Section B.1. below).

## B.   Defendant USG's Situation and Defenses Are Significantly Different From Other Defendants' Situations and Defenses.

Although plaintiffs have brought this action against a number of defendant manufacturers of EIFS products, in fact, each individual owner in the potential class typically has a claim against only one of the defendants (or two at most, such as is the situation with the Todds).  The plaintiffs' pleadings, however, seek to bring the class action against all of the defendants as a group.  In doing this, the plaintiffs make absolutely no distinctions between defendant manufacturers and have actually joined together a series of class action claims.  Each defendant, however, is not the same and the distinctions between them also make this case unsuitable for class treatment.

### 1.   USG has never been a member of EIMA, the basis for Plaintiffs' conspiracy, fraud and misrepresentation allegations.

Perhaps the most important distinction between defendant USG and the remainder of the defendants is that defendant USG is not now, nor has it ever been, a member of EIMA -- the EIFS Industry Manufacturers' Association.  (See Depo. of Roy Dahlberg at 62, 63).  Nor has defendant USG ever been made aware of any complaints EIMA

---

[1]Defendant USG has not yet moved for dismissal pursuant to 28 U.S.C. § 1332 based upon the Todds' amount in controversy.

6

has received regarding defendant USG's products. (Depo. of Roy Dahlberg at 69).

EIMA forms the basis for plaintiffs' conspiracy, fraud and misrepresentation allegations. (See Complaint at ¶¶ 52-55; 67-73; 74-80). Thus, the plaintiffs' allegations which are ultimately based upon EIMA association cannot serve plaintiffs in meeting their burden of proof that common issues of fact predominate over individual issues. Further, a single class action against EIMA and non-EIMA defendants on these causes of action would be unfair, inconsistent and inappropriate.

> **2. Defendant USG was only in the EIFS market for a short time period and discontinued marketing the system based upon a belief that it was neither practical nor reliable.**

Unlike most, if not all, of the other defendants, USG no longer markets the Exterior Insulation Finish System that is the subject of this litigation. Defendant USG entered the EIFS market in late 1993. After hearing about the problems in Wilmington, USG investigated actual construction practices' effect upon EIFS, determined that EIFS was neither practical nor reliable, and discontinued marketing EIFS in April 1996. Thus, the number of homes upon which Defendant USG's product appears is relatively small. Further, <u>USG has never received a complaint about its EIFS outside the greater Wilmington, NC area</u>. (Depo. of Roy Dahlberg at p. 74).

At the request of various North Carolina USG EIFS homeowners, Defendant USG has inspected many homes, has settled several claims,

and will continue to attempt to do so.[2]  Obviously, the position taken by Defendant USG regarding EIFS is in marked contrast to the position taken by the other defendants.

### 3. Defendant USG has never had "certified applicators", whom the plaintiffs allege that the defendants failed to train and supervise.

Also at issue in each individual homeowner situation will be whether the EIFS installer (a.k.a. "applicator") properly applied the products.  These installers are usually local operations; thus, there are literally thousands of them across the country who installed the products.

In an attempt to hold the defendant manufacturers liable for these other parties' negligence, plaintiffs allege that the defendants failed to adequately train and supervise so-called "certified applicators" of the EIFS products. (Complaint at ¶¶ 56-57).  Yet another distinction between Defendant USG and most of the other defendants is that because USG entered the market only in 1993, it never certified any applicators (Depo. of Roy Dahlberg at 46), but instead sold to applicators, almost all of whom had previously been trained or "certified" by other EIFS manufacturers. Thus, Defendant USG will be defending this claim differently from those manufacturers who certified EIFS applicators.

---

[2]Defendant USG would respectfully show the Court that it has now entered settlement agreements with approximately 1/3 of the Wilmington homeowners with USG EIFS and is continuing its efforts in this regard.

8

### 4. There are numerous other distinctions between the Defendant USG and the other defendants.

Each defendant has its own product, specifications, design, installation instructions, and limited warranty. Each defendant's sales and marketing efforts have varied significantly from that of the other defendants. For example, Defendant USG never marketed its EIFS products directly to homeowners, whereas it appears from the documents produced by some of the other defendants that they did market EIFS products directly to homeowners. Each plaintiff's involvement with a given manufacturer is, by necessity, significantly different from every other plaintiffs' situation. In summary, class members dealing with Defendant USG are in a significantly different situation from individuals dealing with other defendants.

### C. The Only Representative Party with a Claim Against USG Cannot Fairly and Adequately Protect the Interests of the Class.

In this case, it is clear that the Todds objectives and interests are potentially antagonistic to the interests of those whom they purport to represent in at least the following ways:

- The Todds are parties in separate individual state court litigation which, if settled or tried before this case, would remove them as representative parties in this case.

- In the individual action, the Todds have expressed their position that other parties, in addition to the EIFS manufacturers, are liable for damages cause by EIFS. Other parties are not being sued in the instant litigation.

- The Todds have made no efforts to sell their home and therefore have no personal basis for "stigma" damages.

9

- The Todds do not meet the jurisdictional prerequisite under 28 U.S.C. § 1332; <u>Snyder v. Harris</u>, 394 U.S. 332 (1969); and <u>Zahn v. International Paper Co.</u>, 414 U.S. 291 (1973); and are therefore subject to a dismissal motion in this action.[3]

Thus, it can be fairly concluded that the Todds interests are dissimilar and potentially antagonistic to the interests of those whom they purport to represent and that they are inadequate representatives of the class.

## II. The Action Does Not Meet The Prerequisites Of Federal Rule of Civil Procedure 23(b)(3)

The questions under Rule 23 are whether common issues predominate and whether a class action is the superior way to handle the litigation.

### A. Individual Factual and Legal Issues Predominate, Especially With Regard to Defendant USG.

A careful examination of the plaintiffs' list of "issues of fact and law common to all members of the class" (Pl. Memo at p. 14) reveals that <u>each and every one of these issues is, in part or whole, an individual plaintiff or individual defendant issue</u>, unsuitable for class treatment. Whether each and every defendants' EIFS was defectively designed and whether each and every defendant was negligent in selling EIFS must be determined on an individual defendant basis. Whether EIFS has caused or will cause structural

---

[3]Defendant USG does not concede that other plaintiffs do meet the jurisdictional prerequisite of 28 U.S.C. § 1332. Knowledge of the amount of the Todds' claim is a result of discovery in this case. Defendant USG cannot, at this time, similarly assess the ability of other plaintiffs to meet the jurisdictional prerequisite.

Case 5:96-cv-00287-BR   Document 135   Filed 10/30/96   Page 10 of 21

components of plaintiffs' homes to rot is an individual plaintiff question as is whether EIFS has caused a diminution of value in plaintiffs' properties.

Also at issue in each individual instance is whether the applicator properly applied the defendant's product and therefore whether the applicator contributed to the plaintiff's damages. Because there are so many applicators, these issues are highly individualized and are improper for class certification. See Caruso v. Celsius Insulation Resources, Inc., 101 F.R.D. 530, 536 (M.D. Pa. 1984) (issues related to involvement of third-party installers, middlemen, and suppliers were important in denying certification); Georgine v. AmChem Products, 83 F.3d 610 (3rd Cir. 1996) (denying class certification to class of asbestos plaintiffs in part because of complexities of causation in each plaintiff's case created by role of cigarettes). Also, some plaintiffs have already pursued or will pursue claims against their architect, builder, and/or applicator, and some plaintiffs have no doubt already been compensated or will be compensated for damages by another party. Additional individual issues include the identity and potential liability of the window and door manufacturers and installers.

Another individualized factual issue will be the effect that the various building codes and regulations have on the performance and application of the EIFS systems. Some jurisdictions may have required interior vapor retarders that may play a role in trapping moisture in walls while other jurisdictions have other approaches

11

to moisture control. In addition, each county or city has a building inspector, and his or her particular approach to applying the building code will impact claims as well. As a result, building code differences will create major factual differences between the various plaintiffs.

For all of these reasons, the prerequisite of Federal Rule of Civil Procedure 23(c) cannot be met. Indeed, this case is strikingly similar to In re American Medical Systems, supra at 1084, quoting, In re Dalkon Shield, 693 F.2nd 847, 853 (9th Cir. 1982), cert. denied, 459 U.S. 117 (1983), in which the Court held that:

> No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasors' affirmative defenses (such as failure to follow directions, ...contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.

In summary, and contrary to the plaintiffs' assertions, there is simply no "standard, unitary set of operative facts concerning both the defendants' conduct and the [EIFS] product itself" which makes this case suitable for class certification. (Pl. Memo at 14).

**B. A Class Action Is Not Superior To Other Available Methods For Adjudication Of The Controversy As Against Defendant USG.**

**1. The Todds' state court case is demonstrative.**

As indicated above, the only class representative with a purported claim against Defendant USG also has pending in state

12

court a similar action against Defendant USG and other third-parties which are potentially liable. This alone speaks volumes regarding the superiority of other methods for adjudication of the controversy against Defendant USG. Given the likelihood that the conduct of third parties will enter into the determination of the issues of causation, product defect and ultimate liability of the EIFS manufacturers, and given the possibility that the jury could find that one or more of these third parties -- and not the EIFS manufacturer -- is liable, any plaintiff who chooses to sue only the EIFS manufacturer (as do the plaintiffs in this case) is taking a significant risk. Therefore, this case is one in which certification will likely <u>increase</u> rather than decrease the likelihood of a multiplicity of lawsuits and inconsistent results, as the potentially liable third parties are sued in separate litigation. Such a likelihood is specifically pertinent to this Court's inquiry into the superiority and necessity of class action status under Rule 23(b)(3).

### 2. Differences in states' laws regarding the affirmative defenses is demonstrative.

In their Memorandum in Support of Class Certification, plaintiffs attempted only to address differences in state law issues with regard to their causes of action. However, there are significant differences in many of the affirmative defenses that will be tried, none of which are dealt with in plaintiffs' memo. Many of the plaintiffs' cases, for example, may turn on the statute of limitations. Of course, different states have different

13

applicable time periods. See N.Y. C.P.L.R. §213 which may provide for a 6 year or a 4 year statute; Va. Code § 8.2-725 and 8.01-243 which may provide a 4 year or a 2 year statute; S.C. Code § 15-3-530 which may provide a 3 year or 6 year statute depending on time of accrual; and Pa. Code §§ 13-2725 and 42-5527 which may provide a 6 year or a 4 year statute. The states also differ on exactly what starts the statute. For example, North Carolina follows the rule that a cause of action accrues when the injury becomes apparent. G.S. 1-50(7). In contrast, West Virginia holds that the statute begins only when the party should have known of (1) the injury; (2) the manufacturer; and (3) the causal relationship between the product and the injury. Hickman v. Grover, 178 W. Va. 249, 358 S.E.2d 810 (1987).

Because these cases involve construction, statutes of repose will also be important. Each state has its own statute of repose, however, with its own time periods. Utah and Pennsylvania, for example, have 12 year statutes. Utah Code § 78-12-25.5; Pa. Code § 42-5536. On the other hand, Oregon has a 10 year statute, Ore. Code § 12.115[1], and South Carolina has a 13 year statute. S.C. Code § 15-3-640. Many of the states also have their own exceptions to the statute. South Carolina exempts fraud and gross negligence and does not apply the limitation to toxic products. S.C. Code § 15-3-670. North Carolina exempts fraud or wilful or wanton negligence. N.C.G.S. § 1-50(5). These statutes and exceptions are merely examples of the problems that the differences in state law will create. For example, some states' statutes of repose include

14

within their scope design professionals but not material suppliers while other states' statutes include both. It is unclear, given the plaintiffs' allegations in this case, whether EIFS suppliers would be considered material suppliers or design professionals.

### 3. Recent Decisions Of The Third And Fifth Circuits Indicate that Class Certification Is Inappropriate.

The recent decisions of the Third and Fifth Circuits in Castano v. The American Tobacco Co., 84 F.3d 734 (5th Cir. 1996); and Georgine v. AmChem Products, Inc., et al., 83 F.3d 610 (3rd Cir. 1996), provide highly persuasive authority that the Court should deny certification.

Considering a national class action brought by "nicotine-addicted" plaintiffs against cigarette manufacturers, the district court in Castano had certified a class. The Fifth Circuit then reversed the decision, holding that the district court erred in two ways. First, the district court failed to consider how variations in state law affected the predominance of common issues. Second, the court failed to consider how a trial would actually be conducted. Because these problems overwhelmed the advantages of class certification, the court decertified the class.

On the state law issue, the Fifth Circuit held that the district court could not rely upon the assurances of counsel that state law issues did not predominate. Instead the district court had to make its own findings in that regard. The court then observed that the many differences in state law made a class action inappropriate.

15

For example, just as here, the plaintiffs had brought a fraud claim. The Fifth Circuit observed, however, that the states treat fraud in many different ways. Similarly, just as here, the plaintiffs had brought a claim under product liability theories, but the court found substantial differences in product liability laws and substantial differences in the applicable affirmative defenses. Considering the many differences in state law, the court held that common issues did not predominate and that class certification was improper. Of course, this rationale is equally applicable here.

The Georgine court reached the same result for many of the same reasons.[4] In that case, the plaintiffs brought a national class action on behalf of persons who had been exposed to asbestos and who would suffer injuries and damages in the future. The Court observed that in a tort case of this type, individual state law issues dominate. The Court then held:

> . . . the class members' claims vary widely in character. Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffered no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling Asbestosis, or from Mesothelioma . . . . Each has a different history of cigarette smoking, a fact that complicates the causation inquiry . . . . These factual differences translate into significant legal differences. Differences in amount of exposure and the nexus between exposure and injury leads to disparate applications of legal rules, including matters of causation, comparative fault, and the types of damages available to each plaintiff. Id. at 626.

---

[4] USG was one of the settling parties in Georgine, and as a result, it supported class certification to accomplish the settlement. In Georgine and other cases, however, USG has opposed class certification where the case is in litigation.

On that basis, the Court denied certification. The <u>Castano</u> and <u>Georgine</u> cases point out why this Court should deny certification in the instant case.

## CONCLUSION

For the above-stated reasons, Defendant USG respectfully requests that the Plaintiffs' Motion for Class Certification be denied.

Respectfully submitted,

_James B. Pressly, Jr./mdc_
James B. Pressly, Jr., Fed. ID #3147
Moffatt G. McDonald, Fed. ID #2805
HAYNSWORTH, MARION, McKAY
& GUÉRARD, L.L.P.
Post Office Box 2048
Greenville, SC 29602
(864) 240-3200
Attorneys for Defendant United States
Gypsum Company

Date: 10/29/96

G:\DOC\WDC\4542-1L.MEM

17

This is to certify that the foregoing DEFENDANT U.S. GYPSUM'S MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION was served in the above-referenced case by depositing a copy of said document in the United States Mail, postage prepaid, on this the ~~29th~~ day of ~~Oct~~, 1996, addressed as follows:

Stuart L. Egerton, Esquire
PATTERSON, DILTHEY, CLAY ETC.
116 Princess Street
P. O. Box 2258
Wilmington, NC 28402-2258
Attorney for Continental Stucco
Products

Donald Britt, Jr.
The Law Firm of Donald Britt
20 South Fifth Avenue
Wilmington, NC 28401
Attorneys for Thomas Waterproof
Coatings Co.

Steven W. Ouzts
TURNER, PADGET, GRAHAM & LANEY
NationsBank Plaza
17th Floor, 1901 Main Street
P. O. Box 1473
Columbia, SC 29202
Attorneys for Parex, Inc.

Rodney A. Dean
DEAN & GIBSON
Cameron Brown Building,
Suite 402
301 South McDowell Street
Charlotte, NC 28204-2686
Attorneys for Omega Products
Corporation

Stacey M. Lynch
ROGERS, TOWNSEND & THOMAS, P.C.
P. O. Box 100200
Columbia, SC 29202-3200
Attorneys for Pleko Products

Edward M. Woodward, Jr.
WOODWARD, COTHRAN & HERNDON
1300 Sumter Street
P. O. Box 12399
Columbia, SC 29211
Attorneys for Fineston

Susan Burkhart
CRANFIELD, SUMNER & HARTZOG
Hillsborough Place
225 Hillsborough Street
Suite 300
P. O. Box 27808
Raleigh, NC 27611

Lynn Searl, Legal Secretary
HAYNSWORTH, MARION, McKAY
& GUÉRARD, L.L.P
P. O. Box 2048
Greenville, SC 29602
(864) 240-3200

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil No. 5-96-CV-287-BR(2)

IN RE STUCCO LITIGATION

THIS DOCUMENT RELATES TO:          **CERTIFICATE OF SERVICE**
ALL CASES:

      This is to certify that the foregoing DEFENDANT U.S. GYPSUM'S MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION was served in the above-referenced case by mailing a copy of said document by Federal Express, Overnight Delivery, on this the 29th day of _Oct._, 1996, addressed as follows:

Marvin K. Blount, Jr.
Jennefer J. Cross
LAW OFFICES OF MARVIN K. BLOUNT, JR.
400 West First Street
Greenville, NC 27835

Everette L. Doffermyre
Laura Shamp
DOFFERMYRE, SHIELDS, CANFIELD,
KNOWLES & DEVINE
1600 The Peachtree
1355 Peachtree Street
Atlanta, GA 30309

Charles F. Blanchard
BLANCHARD, JENKINS & MILLER, P.A.
3600 Glenwood Avenue, Suite 103
Raleigh, NC 27612

William M. Audet
The Alexander Law Firm
55 South Market Street
Suite 1080
San Jose, California 95113

W. Andrew Copenhaver, Esquire
WOMBLE, CARLYLE, SANDRIDGE ETC.
1600 Southern National
Financial Center
P. O. Box 84
Winston-Salem, NC 27102
Attorneys for STO Corp., Dryvit
Systems, Inc., Parex, Inc.,
Senergy, Inc. and Thoro Systems
Products, Inc.

Lynn Searl, Legal Secretary
HAYNSWORTH, MARION, McKAY
& GUÉRARD, L.L.P
P. O. Box 2048
Greenville, SC 29602
(864) 240-3200

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

IN RE STUCCO LITIGATION

Civil No. 5-96-CV-287-BR(2)

THIS DOCUMENT RELATES TO:
ALL CASES

**INDEX TO EXHIBITS**
**DEFENDANT U.S. GYPSUM'S MEMORANDUM**
**IN OPPOSITION TO CLASS CERTIFICATION**

1.   Excerpts from Deposition of Thomas Todd, taken on August 6, 1996.

2.   R.V. Buric Construction Consultants, Inc. Inspection Report (11/15/96) of Todd Residence.

3.   Excerpts from Deposition of U.S. Gypsum Company, taken on September 11, 1996.

4.   Defendant U.S. Gypsum Company's Response to Plaintiffs' Questionnaire.

5.   Complaint in <u>Thomas E. Todd and wife, Virginia J. Todd v. Eddie Evans Construction, Inc; James F. Henley; Timothy B. Littleton and John Hatfield d/b/a H&L Exterior Walls; H&L Exteriors, Inc.; Shield Industries, Inc. and United States Gypsum Company a subsidiary of USG Company</u>, filed in the General Court of Justice, New Hanover County, North Carolina on June 26, 1996.

1

# NOTE:

This Is Only A Partially Scanned Document.

Please See Case File For Attachments,
Exhibits, Affidavits, Or Other Material Which
Has Not Been Scanned