UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION



IN RE: STUCCO LITIGATION

Master File No. 5-96-CV-287-BR(2)
MDL Docket No. 1132

SHOREFRONT JEWISH GERIATRIC
CENTER, INC.,

        Plaintiff,

- against -

DRYVIT SYSTEMS, INC.,

        Defendant.

No. 5:01-CV-127-BR(2) ✓

---

DRYVIT SYSTEMS, INC.'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR RECONSIDERATION

---

Introduction

The Fourth Circuit has made it clear that reconsideration is extraordinary relief that is only to be invoked upon a showing of exceptional circumstances. Plaintiff has not presented any circumstances -- let alone exceptional ones -- that would justify reconsideration.

The 21 October 2003 Order was correct on both the facts and law, and its entry was manifestly appropriate. Plaintiff sought to name a new expert witness (Gerry Walters) on a subject that has been in this case from day one, and on which plaintiff already has two expert witnesses from LZA Technology (Richard Tomasetti and Jan Kalas); and to serve a new expert report from Walters more than a year and a half after plaintiff's time to submit expert reports

expired, and months after this Court rather clearly and unambiguously stated that "**NO FURTHER EXTENSIONS SHALL BE ALLOWED**" (emphasis in original).

Plaintiff argues (a) that the Court should not have denied its motion absent a finding of incurable prejudice to Dryvit; and (b) that Dryvit "feigned" prejudice it would suffer if plaintiff were allowed to designate Walters at this late date. Plaintiff is wrong on both points. First, the Court was not required to make a finding of prejudice to Dryvit before it could deny plaintiff's motion; and prejudice to Dryvit was not a basis for the 21 October 2003 Order. Plaintiff's motion for an extension of time to designate Walters was governed by Fed.R.Civ.P. 6(b) -- which provides that such motion should only be granted, "where the failure to act was the result of excusable neglect." It is excusable neglect, not prejudice, which guides this determination. In fact, in one of the cases relied upon by plaintiff, a district court in North Carolina confirmed that "the question is not whether the defendants have been prejudiced, but whether plaintiff has shown good cause for its failure to timely disclose." The other authority relied upon by plaintiff are criminal cases dealing with the preclusion of experts/evidence for the government's violation of Rule 16 of the Federal Rules of Criminal Procedure. Needless to say, such cases have no applicability here.

Second, Dryvit did not "feign" prejudice. Notwithstanding the fact that prejudice need not be shown, Dryvit did demonstrate that it would most certainly be prejudiced if plaintiff was allowed to name Walters at this late date. Fact discovery closed on August 29, 2003 and the parties will complete all expert discovery by the December 15, 2003 deadline set by the Court. The reports of Dryvit's experts, prepared to respond to the report served by plaintiff's experts from LZA, were served by the October 15 deadline set by the Court. Dryvit has conducted the depositions of plaintiff's experts from LZA, and only one day of deposition remains to be

completed (which will occur on December 12). Plaintiff has completed the depositions of Dryvit's experts. Thus, <u>except for one remaining day of deposition, all expert discovery in this case has been completed</u>.

As Dryvit argued on plaintiff's initial motion, if plaintiff is permitted to name a new expert now, it would guaranty at least another round of brand new expert discovery that would take considerable time, well beyond the current December 15 deadline. Among other things, Dryvit would need to search for, identify and retain its own new expert in the field of cement mixtures (Walters' field of discipline), as Dryvit never identified or retained an expert in this discipline because it never saw a need to. Dryvit assembled two experts who are qualified to respond to the two experts plaintiff named from LZA.

Plaintiff argues on this motion that Dryvit would not need to locate a new expert because, plaintiff claims, Dryvit's expert Chris Hornaman is an expert in the field of cement mixtures who can adequately respond to Walters' testimony. Plaintiff is seriously mistaken, and its argument demonstrates a fundamental misunderstanding regarding these fields of expertise. Walters is an expert regarding cement and how cement behaves chemically. Hornaman's expertise is with polymers (such as EVA) and how polymers behave in different environments (including, but not limited to, cementitious environments). Hornaman is not an expert regarding cement or how cement behaves chemically, and he does not evaluate cement. Hornaman evaluates polymers, whether they are in a cementitious environment or another. The fact that Hornaman's CV contains the word "cementitious" does not, ergo, mean that he is a cement expert whom Dryvit would select to respond to the expertise and opinions of an expert, like Walters, on cement and how cement behaves chemically. Had plaintiff timely named Walters,

- 3 -
RTP 76921v1
Case 5:96-cv-00287-BR   Document 138   Filed 10/31/96   Page 3 of 11

Dryvit would have identified and named an additional expert, whose background and expertise matched Walters' background and expertise.

Plaintiff's remaining argument is that Dryvit may challenge LZA's opinions relating to EVA, and that such a challenge, if successful, would leave plaintiff without an expert on that issue on its direct case. The fact that Dryvit told plaintiff's counsel (in passing, during settlement discussions) that it may challenge LZA's opinions is irrelevant to this motion and certainly does not provide a basis for plaintiff to obtain a new expert. Given Dryvit's conviction that EVA was not responsible for the problems at Shorefront, Dryvit would likely challenge the opinion of any expert who opined that EVA was a cause, Walters included. In any event, and more to the point, if Dryvit's passing statement opened the door for another round of expert discovery, then every time a party indicates that it may challenge an adversary's expert, the adversary would have grounds to retain another expert. That cannot be right.

## STATEMENT OF FACTS

The relevant facts are set forth in Dryvit's 6 October 2003 opposition to plaintiff's motion to name an additional expert witness, another copy of which is annexed to the accompanying Cohen Declaration as Exhibit A. Those facts are incorporated herein. For the sake of brevity, they will not be repeated.

## ARGUMENT

The purpose of a reconsideration motion "is to permit the district court to correct an erroneous judgment [or order] and thereby avoid the necessity of an appeal." United States v. Jones, 42 F.Supp.2d 618, 620 (W.D.N.C. 1999). Plaintiff has not demonstrated that the 21 October 2003 Order was erroneous in any respect; its motion for reconsideration fails because the Order was correct on both the facts and law, and its entry was entirely appropriate.

As an initial matter, it should be noted that reconsideration "is extraordinary and is only to be invoked upon a showing of exceptional circumstances." Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979). Accord Boyd v. Bulala, 905 F.2d 764, 769 (4th Cir. 1990); Jones, 42 F.Supp.2d at 620 ("Rule 60(b) provides for extraordinary relief and is only to be invoked upon a showing of exceptional circumstances"). Here, plaintiff does not suggest any circumstances -- let alone exceptional ones -- that would justify reconsideration.

A. The 21 October 2003 Order was Entirely Appropriate

The 21 October 2003 Order was correct on both the facts and law. First, plaintiff's time to serve expert reports expired in February 2002, and plaintiff's proposed new expert report did not fit within the confines of the supplement allowed in the February 5, 2003 Order (i.e., it is not based on new information coming to light as a result of additional testing performed on the Shorefront building). The Court properly recognized that plaintiff was seeking to serve a new expert report from Walters more than a year and a half after plaintiff's time to submit expert reports expired, and months after the Court rather clearly and unambiguously stated that "**NO FURTHER EXTENSIONS SHALL BE ALLOWED**" (emphasis in original).

Further, the Court properly recognized that plaintiff has no justifiable reason for its woefully untimely attempt to bring in a new expert. The 21 October 2003 Order correctly notes that since at least March 2002 (when it served its expert report from LZA), plaintiff has contended that the presence of EVA in Dryvit's basecoat was the cause of the failure of the EIFS. There simply is nothing new about this theory of causation that would have prevented plaintiff from serving a report from Walters by the February 2002 deadline.

RTP 76921v1
Case 5:96-cv-00287-BR    Document 138    Filed 10/31/96    Page 5 of 11

## B. Plaintiff's Arguments Regarding Prejudice Are Mistaken

Plaintiff argues (a) that the Court should not have denied its motion absent a finding of incurable prejudice to Dryvit; and (b) that Dryvit "feigned" prejudice it would suffer if plaintiff were allowed to designate Walters at this late date. Pl. Memorandum at 2-4. Plaintiff is wrong on both points.

### (i) Excusable Neglect is the Appropriate Standard

This Court was not required, before denying plaintiff's motion, to find any prejudice to Dryvit. Plaintiff's motion for an extension of time to designate an additional expert witness, made well after the February 2002 deadline for doing so, was governed by Fed.R.Civ.P. 6(b) -- which provides that such motion should only be granted, "where the failure to act was the result of excusable neglect." Thus, the **sole consideration** for the Court was whether plaintiff's failure to have complied with the Court's earlier orders was the result of excusable neglect. Having determined that plaintiff's neglect, if any, was not excusable, the Court properly denied plaintiff's motion. Prejudice to Dryvit need not be shown and it was not a basis for the 21 October 2003 Order.[1]

This identical issue was present in <u>St. Clair v. General Motors Corporation</u>, 10 F.Supp.2d 523 (M.D.N.C. 1998). There, the Court entered an Order requiring, among other things, that plaintiff disclose the identity of his expert and provide an expert report by April 23, 1997. Plaintiff, however, failed to identify or disclose the opinion of any experts. Six months after the deadline, in October 1997, plaintiff moved for an extension of time to name an expert (and plaintiff's motion was accompanied by an identification of plaintiff's proposed expert).

---

[1] Plaintiff states that the 21 October 2003 Order "considered the argument by Dryvit Systems, Inc. ("Dryvit") that it would be prejudiced by Dryvit's [sic] late disclosure of D. Gerry Walters ("Walters"), Shorefront's additional chemistry expert." Pl. Memorandum at 1. But there is no indication in the 21 October 2003 Order that prejudice to Dryvit was considered by the Court.

- 6 -

Because plaintiff's motion was filed beyond the April 23, 1997 deadline, the Court noted that pursuant to Fed.R.Civ.P. 6(b), plaintiff's motion should be granted only "if there is evidence that plaintiff's omissions resulted from excusable neglect." Id. at 528. Accord United States v. Premises Known as Lots, 682 F.Supp. 288, 290 (E.D.N.C. 1987) (moving party seeking extension of time to act, after deadline to do so expired, must demonstrate under Fed.R.Civ.P. 6(b) that "the failure to act was the result of excusable neglect").

In analyzing whether plaintiff's neglect was excusable, the Court in St. Clair noted that under Fourth Circuit law, the most important factor "is the reason for the failure to act." 10 F.Supp.2d at 529, citing Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996). In St. Clair, the Court found that plaintiff's failure over a six-month period to seek an extension of time to name a new expert was inexcusable, and therefore properly denied plaintiff's motion.

Here, Shorefront's neglect is far more egregious than the plaintiff's neglect in St. Clair. First, whereas the plaintiff in St. Clair waited six months after the deadline to seek an extension of time to name an expert, Shorefront waited over one and a half years to seek an extension of time. As the 21 October 2003 Order correctly notes, "plaintiff acknowledges that at least for the past one and one half years, plaintiff has contended that EVA resin was a cause of the failure of the EIFS." Order at 4, Motion, Exh. 1.

Further, the most important factor in this analysis, as recognized by the Fourth Circuit, is the "reason for the failure to act." Here, the Court was correct in flatly rejecting plaintiff's explanation for its failure to act in a timely manner, stating:

> Plaintiff claims that the late disclosure of Walters is due to recent depositions during which plaintiff "learned additional facts about the EVA material and Dryvit's position related thereto." (Pl.'s Motion at 3). However, ... plaintiff acknowledges that at least for

> the past one and one half years, plaintiff has contended that EVA resin was a cause of the failure of the EIFS. ... The fact that plaintiff's timely designated expert witness raised this theory undermines plaintiff's argument. Plaintiff itself has obviously known about its own theory for some time. The court is not persuaded that the recent depositions justify late disclosure of Walters as an expert witness.

Order at 4-5, Motion, Exh. 1.

Notwithstanding plaintiff's failure to come close to meeting the "excusable neglect" standard set forth in Fed.R.Civ.P. 6(b), plaintiff argues that it should not be prohibited from designating Walters out of time "absent severe prejudice that cannot otherwise be cured." Pl. Memorandum at 2. However, Akeva, LLC v. Mizuno Corporation, 212 F.R.D. 306 (M.D.N.C. 2002), cited by plaintiff, confirms that "the question is not whether the defendants have been prejudiced, but whether plaintiff has shown good cause for its failure to timely disclose." Id. at 309. The other authority to which plaintiff cites is completely inapposite; plaintiff cites to criminal cases dealing with the preclusion of experts/evidence for the government's violation of Rule 16 of the Federal Rules of Criminal Procedure. Pl. Memorandum at 2-3. Needless to say, these cases have no applicability to the case *sub judice*.

(ii) In any Event, Dryvit Would Be Prejudiced

Contrary to plaintiff's allegation, Dryvit did not "feign" prejudice. As set forth *infra* at p. 2-3, Dryvit would most certainly be prejudiced if plaintiff was allowed to name Walters at this late date.[2]

Plaintiff suggests that Dryvit would not need to locate a new expert because Hornaman is an expert in the field of cement mixtures, and can adequately respond to Walters' testimony.

---

[2] As a courtesy, plaintiff's counsel consented to Dryvit's application for a one-week extension of time to file these opposition papers (from December 4 to December 11). In return, Dryvit agreed that it would not use the one-week period as a basis for the denial of plaintiff's motion for reconsideration. Accordingly, Dryvit wishes to advise the Court that it is not relying on this one-week period in opposition to plaintiff's motion.

Pl. Motion at ¶8, Memorandum at 2. But as set forth above, plaintiff's argument demonstrates a basic misunderstanding regarding these fields of expertise. Hornaman is not a cement expert and not the type of expert that Dryvit would choose to respond to the opinions of a cement expert.[3]

In sum, while prejudice to Dryvit need not be demonstrated and was not a basis for the 21 October 2003 Order, Dryvit would most certainly be prejudiced if plaintiff was allowed to name a new expert at this late date.

C. Dryvit's Passing Comment Is Irrelevant

Plaintiff's remaining argument is that Dryvit may challenge Messrs. Tomasetti and Kalas's opinions concerning EVA. Pl. Motion at ¶4-5; Pl. Memorandum at 2. But as set forth above, the fact that Dryvit commented (in passing, during settlement discussions) that it may challenge LZA's opinions is irrelevant to this motion and certainly does not provide a basis for plaintiff to obtain a new expert.

It also bears mentioning that plaintiff disagrees that there is any basis for Dryvit to challenge Messrs. Tomasetti and Kalas's opinions. Pl. Motion at ¶5 (plaintiff "disagrees with Dryvit's position about ... its experts from LZA"). Further, both Messrs. Tomasetti and Kalas have testified under oath that they are entirely competent to offer their opinions on EVA. See Kalas Dep. 28(23)-29(5); 54(17)-56(6), Cohen Decl., Exh. B; Tomasetti Dep. 57(17)-59(12); 198(18)-199(24), Cohen Decl., Exh. C.

---

[3] Plaintiff states on several occasions that Dryvit had already retained a chemistry expert (Hornaman) at the time that Dryvit was advising the Court that it would need to retain a chemistry expert should plaintiff's motion be granted. See, e.g., Motion at ¶2, 7; Pl. Memorandum at 4. Plaintiff is confused. Dryvit retained Hornaman (a chemist), and advised the Court that it would need to retain a cement expert if plaintiff's motion was granted. See Dryvit's 10/6/03 Opposition Br. at ¶5, Cohen Decl., Exh. A.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration of the 21 October 2003 Order should be denied.

Dated: December 10, 2003

Respectfully submitted,

_____
Andrew P. Fishkin (AF 7571)
David N. Cohen (DC 4287)
EDWARDS & ANGELL, LLP
750 Lexington Avenue
New York, New York 10022
(212) 308-4411

Of Counsel:

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
P. O. Box 13069
Research Triangle Park, NC 27709
(919) 484-2300

Attorneys for Dryvit Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 10th day of December, 2003, she served **DRYVIT SYSTEMS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION and DECLARATION OF DAVID N. COHEN** by placing said copy in a prepaid Federal Express envelope and addressed to the persons hereinafter named, at the places and addresses stated below:

Paul Monte, Esq.
Tony Berman, Esq.
John P. Huber, Esq.
Berman Paley Goldstein & Kannry, LLP
500 Fifth Avenue
New York, NY 10110

Arthur Edge, Esq.
Edge & Collins
1111 The Financial Center
505 20th Street North
Birmingham, AL 35203

_/s/ Jacqueline Terry_
Jacqueline Terry